**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 7 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

DAVID C. MUNOZ, M.D.

       Plaintiff-Appellant-
Cross-Appellee,

v.

ST. MARY-CORWIN HOSPITAL;
ST. MARY-CORWIN REGIONAL
MEDICAL CENTER OF PUEBLO,
COLORADO, a Colorado nonprofit
corporation; SISTERS OF CHARITY
HEALTH SERVICES COLORADO,
a Colorado corporation; CENTURA
HEALTH CORPORATION,
a Colorado corporation,

       Defendants-Appellees-
Cross-Appellants.

Nos. 99-1377 & 99-1391

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 96-WM-2346)

---

Submitted on the briefs:

Diane MacArthur Brown of Olsen & Brown, L.L.C., Niwot, Colorado,
for Plaintiff-Appellant-Cross-Appellee.

Glenn H. Schlabs and William L. Sasz of Sherman & Howard, L.L.C.,
Colorado Springs, Colorado, for Defendants-Appellees-Cross-Appellants.

Before **TACHA**, **PORFILIO**, and **EBEL**, Circuit Judges.

**TACHA**, Circuit Judge.

Plaintiff David C. Munoz, M.D., appeals the district court's grant of summary judgment to St. Mary-Corwin Hospital, St. Mary-Corwin Regional Medical Center of Pueblo, Colorado, Sisters of Charity Health Services Colorado, and Centura Health Corporation (defendants) on his complaint alleging that defendants illegally discriminated against him on the basis of his age and national origin. Plaintiff brought his federal claims under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17. Plaintiff also asserted state law claims for breach of contract and promissory estoppel. In a cross-appeal, defendants challenge the district court's denial of their request for an award of costs. We exercise jurisdiction pursuant to 28 U.S.C. § 1291. We affirm the district court's grant of summary judgment on behalf of defendants and reverse and remand as to defendants' appeal of the court's denial of costs. [1]

---

[1] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The cases are therefore ordered submitted without oral argument.

# I. Background

In the summer of 1994, plaintiff entered a three-year residency program at St. Mary-Corwin Hospital in Pueblo, Colorado, under the direction of Dr. Charles Raye. Residents in the program received quarterly performance evaluations from the faculty. Upon starting the program, plaintiff signed an employment agreement setting out the obligations and expectations of the residents and the hospital. The agreement provided that a resident could only be terminated for cause, and set out a grievance process whereby a resident subjected to an adverse employment action would receive written notice of the action and a right to appeal the action to the Graduate Medical Education Committee (the Committee). Any appeal of an adverse employment action was to be conducted according to the program's due process policy which provided for a hearing at which the resident could present information relevant to the appeal. The resident was to receive a written decision.

Plaintiff claims that soon after he started the residency program, Dr. Raye targeted him for criticism. Following plaintiff's first evaluation, considered good, although it expressed concern with plaintiff's failure to thoroughly check out every patient and his performance of procedures without required supervision, Dr. Raye began to closely supervise plaintiff's performance. In November 1994, plaintiff performed a circumcision without faculty supervision. The procedure was not done correctly and a urologist was required to correct the circumcision.

Plaintiff was directed not to perform any more unsupervised procedures. Later that day, plaintiff violated this directive and was observed doing another unsupervised circumcision.

On February 22, 1995, plaintiff was placed on probation. He did not avail himself of the program's grievance process regarding the warning for performing unsupervised procedures or the probation action. Plaintiff was ultimately terminated from the program on April 10, 1995. In Dr. Raye's memorandum to plaintiff's file regarding termination, he detailed numerous other infractions of the rules regarding patient care by plaintiff. *See* Appellant's App. Vol. III at 611-12. Plaintiff grieved his termination and was present at a hearing before the Committee. The Committee upheld plaintiff's termination.

Because some faculty members expressed concern that plaintiff's trouble with the program may have been caused by psychological problems, the committee agreed to meet to reconsider plaintiff's termination based on the outcome of a voluntary psychiatric evaluation. Plaintiff was told that he may or may not be included in this second meeting. Following consideration of the plaintiff's psychiatric evaluation, the committee met without plaintiff in attendance and affirmed its decision to terminate him from the residency program.

Plaintiff appealed the Committee's termination decision to the hospital's acting CEO, Dr. William Turman. Following a meeting with plaintiff and

consideration of all the information he had been given regarding plaintiff's performance in the program, Dr. Turman denied plaintiff's appeal, finding that it would be "inappropriate for [plaintiff] to continue in the Residency." *Id.* at 667.

Plaintiff brought this action in federal court alleging that his termination was based on age and national origin discrimination. Plaintiff also asserted state law claims for breach of contract, alleging that his termination was without cause and violated due process--and promissory estoppel, claiming he reasonably relied on defendants' affirmative action policy. The district court granted defendants' motion for summary judgment on all of plaintiff's claims.

On appeal, plaintiff contends that the district court erred in (1) granting defendants summary judgment on his breach of contract and estoppel claims; (2) granting defendants summary judgment on his claims of age and national origin discrimination; (3) striking plaintiff's expert rebuttal witness; and (4) denying plaintiff's motion to compel discovery. We will address each of these in turn.

## II. Discussion - No. 99-1377

### A. Standard of Review

We review the district court's grant of summary judgment de novo, applying the same legal standard as the court below. *Bullington v. United Air*

*Lines, Inc.*, 186 F.3d 1301, 1313 (10th Cir. 1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, we examine the factual record and draw reasonable inferences therefrom in a light most favorable to the nonmoving party. *Bullington*, 186 F.3d at 1313. As the moving parties, defendants shoulder "the initial burden to show that there is an absence of evidence to support the nonmoving party's case." *Thomas v. IBM*, 48 F.3d 478, 484 (10th Cir. 1995) (further quotation omitted). If defendants meet this burden, it falls to plaintiff to "identify specific facts that show the existence of a genuine issue of material fact." *Id*. "The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor." *Id*. (further quotation omitted).

## B. Breach of Contract and Promissory Estoppel Claims

Plaintiff asserted state law breach of contract claims alleging defendants breached the provisions of the employment agreement. Applying Colorado law, we have held that an employer's personnel policies and procedures can form an implied contract. *See Bullington*, 186 F.3d at 1322. Policies and procedures that

"are nothing more than 'vague assurances' by the employer will not suffice." *Id.* (*quoting Vasey v. Martin Marietta Corp.,* 29 F.3d 1460, 1465 (10th Cir. 1999)).

Plaintiff also asserted a claim of promissory estoppel premised on his alleged reliance on defendants' affirmative action policy. In order to sustain a claim under the theory of promissory estoppel, plaintiff "must demonstrate that the employer should have reasonably expected the employee to consider the policy as a commitment from the employer, that the employee reasonably relied on the statements to [his] detriment, and that injustice can be avoided only by enforcement of the policy." *Id.*

In rejecting these claims, the district court provided a thorough analysis of the facts and the law. In plaintiff's sixty-three page appellate brief, he devotes only one short page to these issues and does not point this court to any error in the district court's analysis or conclusions. [2] This court is "not required to manufacture a party's argument on appeal when it has failed in its burden to draw our attention to the error below." *National Commodity & Barter Ass'n Nat'l Commodity Exch. v. Gibbs,* 886 F.2d 1240, 1244 (10th Cir. 1989); *see also*

_____

[2] In their appellate brief, defendants assert that "[t]here is no 'affirmative action program' applicable to the residency program, and it had none when Dr. Munoz was a resident." Appellees' Br. at 6. Plaintiff does not rebut this factual assertion on appeal. Moreover, plaintiff's entire argument to this court on the estoppel issue states: "Even were there no contractual documents in this case, the promissory elements of estoppel were present in abundance." Appellant's Br. at 63.

*Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (holding that perfunctory complaints which fail to frame and develop an issue are insufficient to invoke appellate review). Therefore, we affirm the district court on plaintiff's breach of contract and promissory estoppel issues for substantially the reasons stated in its August 4, 1999 order.

## C. ADEA and Title VII Claims

This court analyzes ADEA claims under the three-step framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Bolton v. Scrivner, Inc.*, 36 F.3d 939, 944 (10th Cir. 1994); *cf. Reeves v. Sanderson Plumbing Prods., Inc.*, No. 99-536, 2000 WL 743663, at *5 (U.S. June 12, 2000) (assuming, without deciding, that *McDonnell Douglas* framework is applicable to ADEA cases). In the very recent case of *Perry v. Woodward*, 199 F.3d 1126 (10th Cir. 1999), we stated:

> A plaintiff relying on *McDonnell Douglas* bears the initial burden of establishing a prima facie case by a preponderance of the evidence. One way a plaintiff may establish a prima facie case of wrongful termination is by showing that: (1) []he belongs to a protected class; (2) []he was qualified for [his] job; (3) despite [his] qualifications, []he was discharged; and (4) the job was not eliminated after [his] discharge. If the plaintiff establishes [his] prima facie case, a rebuttable presumption arises that the defendants unlawfully discriminated against [him]. The defendants must then articulate a legitimate, nondiscriminatory reason for the adverse employment action suffered by the plaintiff. If the defendant is able to articulate a valid reason, the plaintiff can avoid summary judgment only if []he is able to show that a genuine dispute of material fact exists as to whether the defendant's articulated reason was pretextual.

*Id.* at 1135 (citations omitted). [3] The *Perry* court further stated that "the fourth test of the prima facie case is met if the discharged plaintiff can show that someone was hired to replace [him]" and plaintiff is not required to prove that the person hired to replace him belonged to the protected group. *Id*. at 1138.

Applying *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308 (1996), the district court concluded that plaintiff had not established the fourth element of his prima facie case. [4] Here, plaintiff was terminated at age forty-three. He was replaced by a resident who was age forty-one. Thus, both were forty or older and members of the protected class. *See* 29 U.S.C. § 631(a) (ADEA protection is afforded to those "individuals who are at least 40 years of age"). In

---

[3]     In its summary judgment order, the district court applied the prima facie case test articulated by this court in *Sanchez v. Denver Public Schools*, 164 F.3d 527, 531 (10th Cir. 1998), stating in order to establish the fourth element, a plaintiff must show that "(4) [he] was treated less favorably than others not in the protected class." We recognize that this element was modified by this court's decision in *Perry* and that no panel of this court has addressed the question of whether the *Perry* test applies to ADEA claims. Because plaintiff here cannot establish a prima facie case under either test, we do not, at this time, address the applicability of *Perry* to ADEA cases.

[4]     We recognize that although the district court granted defendants summary judgment on plaintiff's ADEA claim based on plaintiff's failure to establish a prima facie case, the district court proceeded to address pretext in relation to plaintiff's ADEA claim in conjunction with its discussion of pretext in relation to plaintiff's Title VII claim. While we affirm the district court's decision on the basis of plaintiff's failure to establish a prima facie case, we note that our subsequent discussion of pretext in relation to plaintiff's Title VII claim is applicable to his ADEA claim as well.

-9-

*O'Connor* , the Supreme Court held that a plaintiff does not have to prove that he was replaced by someone outside the protected class to establish the fourth element of the *McDonnell Douglas* prima facie case. *See id.* at 312 ("The fact that one person in the protected class has lost out to another person in the protected class is . . . irrelevant, so long as he has lost out because of his age."). The Court held that a prima facie case of age discrimination "requires 'evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion,'" *id.* (*quoting International Bhd. of Teamsters. v. United States* , 431 U.S. 324, 358 (1977)), and this inference of age discrimination "cannot be drawn from the replacement of one worker with another worker insignificantly younger" *id.* at 313. Here, we agree with the district court that because plaintiff's replacement was only two years his junior--an obviously insignificant difference--the necessary inference of discrimination was precluded, and he failed to establish his prima facie case. *See Perry,* 199 F.3d at 1136 ("It is undeniable that the Court in *O'Connor* reiterated that there must be a logical connection between each element of the prima facie case and the inference of discrimination.").

Finally, plaintiff claims that defendants discriminated against him on the basis of national origin in violation of Title VII of the Civil Rights Act of 1964. Plaintiff contended that the heightened scrutiny and increased restrictions placed

-10-

on his work and performance were evidence of pretext. Moreover, he contended that other residents with similar or worse infractions of the rules were not subjected to heightened scrutiny. Specifically, plaintiff claims that "numerous non-Hispanic and younger comparators who committed comparable alleged misdeeds and were in identical or comparable circumstances . . . were not fired, disciplined or treated the same as plaintiff." Appellant's Br. at 58.

A plaintiff alleging violations of Title VII must present either direct or indirect evidence sufficient to show intentional discrimination. *See Shorter v. ICG Holdings, Inc.*, 188 F.3d 1204, 1207 (10th Cir. 1999). Here, it appears that plaintiff is attempting to assert a disparate treatment claim. "Because disparate treatment is a form of intentional discrimination, the plaintiff must prove that [his] employer acted with a discriminatory intent or motive." *Bullington*, 186 F.3d at 1315. The same prima facie elements reiterated above apply to plaintiff's national origin discrimination claim. *See Perry*, 199 F.3d at 1135. Because the district court assumed that plaintiff established a prima facie case of national origin discrimination and applied the burden shifting analysis of *McDonnell Douglas*, we do likewise.

Once plaintiff establishes a prima facie case of discrimination, the defendants must offer legitimate, non-discriminatory reasons for their adverse employment decision. *See Bullington*, 186 F.3d at 1316. Plaintiff then bears the

-11-

ultimate burden of establishing that defendants' proffered reasons are pretext for national origin discrimination. *Id.* Plaintiff must demonstrate pretext by establishing "either that a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence." *Id.* at 1317 (further quotation omitted) (alteration in original).

The Supreme Court has recently held that a prima facie case of discrimination, combined with sufficient evidence of pretext, is sufficient as a matter of law to show intentional discrimination. *See Reeves*, 2000 WL 743663, at \*9. "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Hardy v. S.F. Phosphates Ltd.*, 185 F.3d 1076, 1080 (10th Cir. 1999) (further quotation omitted).

In their brief supporting their motion for summary judgment, defendants stated that plaintiff was terminated from the residency program for performing unsupervised procedures, failing to adhere to supervisory directives, failing to respond to faculty, failing to address the complaints of an emergency room patient, treating an emergency room patient in a manner that caused the patient to leave the hospital, failing to follow instructions regarding contacting a surgeon

about a patient, and planning an improper treatment program for a patient.

Dr. Raye determined that these incidents indicated poor judgment on plaintiff's part.[5] The district court concluded that these constituted legitimate nondiscriminatory reasons for plaintiff's termination from the residency program.

The burden of persuasion then shifted back to plaintiff to show that defendants' claimed reasons for terminating him were pretextual, that is, "unworthy of credence." *Bullington*, 186 F.3d at 1317 (further quotation omitted). Although plaintiff cites us to the seemingly inexhaustible litany of "undisputed facts" listed in his response to defendants' motion for summary judgment and his appellate brief, he fails to support his allegations of pretext with any specific facts or empirical evidence other than his general statements that other residents were treated more favorably.[6] He has not only failed to prove that he was treated

---

[5] The record indicates that several of these incidents formed the basis for the Colorado State Board of Medical Examiners' action in placing plaintiff's license on five-years probation. In the probation agreement, plaintiff admitted that he performed an unsupervised circumcision which required further corrective surgery and that he discharged a patient without needed oxygen. *See* Appellant's App. Vol. III at 622. He also admitted that these incidents "establish[] that [plaintiff] has engaged in unprofessional conduct." *Id.*

[6] In response to defendants' motion for summary judgment, plaintiff submitted more than one thousand "Undisputed Facts in Opposition to Defendants' Motion for Summary Judgment." *See* Appellant's App. Vol. III, at 750-913. Both in the district court and on appeal, plaintiff cites to large numbers of these "undisputed facts" to support his allegations. The district court refused to sift through these facts in order to determine which, if any, may contradict defendants' proffered reasons. On appeal, plaintiff submitted over

(continued...)

-13-

less favorably than other residents because of his national origin, he has failed to prove that defendants acted with discriminatory intent or motive. *See id.* at 1315. Moreover, he offers no evidence, circumstantial or otherwise, indicating that there was any nexus between defendants' decision to terminate his residency and his Hispanic origin. *See Shorter*, 188 F.3d at 1210 (holding that plaintiff must establish nexus between discriminatory intent and discharge determination). In conclusion, we agree with the district court that plaintiff has not presented sufficient evidence to create a genuine dispute of material fact as to whether the defendants' proffered reasons are pretext for national origin discrimination. *See Bullington*, 186 F.3d at 1316. Therefore, summary judgment for defendants was appropriate. *See Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 530 (10th Cir. 1994) ("Even though all doubts must be resolved in [plaintiff's] favor, allegations alone will not defeat summary judgment.").

### D. Striking Plaintiff's Rebuttal Witness

---

[6](...continued)
2000 pages of appendix. In his brief, he cites to depositions and exhibits without providing this court with any indication of where in this voluminous record we may be able to find these documents. Therefore, we also decline to "search the record in an effort to determine whether there exists dormant evidence which might require submission of the case to a jury." *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1025 (10th Cir. 1992); *see also SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1513-14 (10th Cir. 1990) (stating that not only will the court not sift through the record to find support for an argument, the court will not manufacture arguments for the party).

Plaintiff argues that the district court erred in granting defendants' motion to strike the rebuttal opinion of his expert witness, Robert Jeffrey, Jr. "This court reviews for an abuse of discretion a district court's refusal to allow rebuttal testimony." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1224 (10th Cir. 2000), *petition for cert. filed* (U.S. July 3, 2000) (No. 00-28). The court's decisions regarding the presentation of evidence will not be disturbed absent a showing of manifest injustice to the parties. *See Camcoa, Inc. v. NEC Tels., Inc.*, 931 F.2d 655, 663 (10th Cir. 1991).

Plaintiff designated Mr. Jeffrey's opinion to rebut the opinion of defendants' expert witness, Dr. Wilson D. Pace. Defendants moved to strike. In an order granting defendants' motion, the magistrate judge concluded that Mr. Jeffrey's opinion did not rebut that of Dr. Pace. Plaintiff filed a lengthy opposition to the magistrate judge's order in the form of an appeal to the district court. The district court overruled plaintiff's objections.

Dr. Pace rendered an opinion on the standards and procedures applicable to intern physicians in the area of plaintiff's residency and family practice. He also reviewed plaintiff's performance during his time in the residency program and rendered the opinion that the process leading to plaintiff's termination comported with the due process contained in the residency manual. Mr. Jeffrey, on the other

hand, rendered his opinion in the areas of fundamentally fair personnel procedures and due process and discrimination in employment.

On appeal, plaintiff asserts that the district court erred in finding that Mr. Jeffrey's opinion did not rebut that of Dr. Pace. He claims that the court "somehow overlooked the actual contents of plaintiff expert's opinion and failed to detect the abundant, lengthy and precise analysis vis-a-vis the residency program's written due process procedures and documents." Appellant's Br. at 66. Once again, plaintiff's argument is woefully lacking in support. He does not point this court to the record evidence of Dr. Pace's opinion allegedly rebutted by Mr. Jeffrey's opinion. Instead, he points us to statements in Mr. Jeffrey's opinion where he opines that the procedures afforded plaintiff before his termination violated Mr. Jeffrey's own perception of due process and fundamental fairness.

It appears, as the district court found, that Mr. Jeffrey's opinion concerned his view of due process and fundamental fairness in the workplace and his opinion of what constitutes discrimination. Our reading does not indicate that he, in any way, offered rebuttal testimony to the opinion of Dr. Pace, and therefore we cannot determine that the district court's order striking Mr. Jeffrey's opinion was an abuse of the court's discretion.

### E. Discovery Claim

Lastly, plaintiff claims that the district court erred in denying his motion to compel. Plaintiff filed a order to compel responses to Nos. 5-8 in his first request for production of documents, and Nos. 1-3, 5, 13-16, and 18-21 in his second request for production of documents and interrogatories. The magistrate judge found that because plaintiff's discovery requests were not in compliance with the court's scheduling order, plaintiff was not entitled to a second set of written discovery and therefore, the court would only consider plaintiff's motion to compel as to Nos. 5-8 of his first request for production of documents.

The magistrate judge accepted as sufficient defendants' response that they had fully complied with Nos. 5 and 6. [7] In No. 7, plaintiff requested extensive information regarding negative intern performance over a five year period. Although defendants asserted that this request was overly broad, they responded that they had provided copies of all disciplinary action and performance evaluations within the five-year time frame. Defendants also found plaintiff's request No. 8 for personnel files for every intern placed on or considered for probation or terminated during the same five-year period to be equally overly

---

[7]    Following consideration of plaintiff's objections to the magistrate judge's order, the district court overruled the magistrate judge's determination that compliance with Nos. 5 and 6 was sufficient. In so doing the court ordered defendants to produce any documents withheld from their responses to interrogatories Nos. 5 and 6. *See* Appellant's App. Vol. I at 223. The record does not indicate that plaintiff renewed his motion to compel as to these requests.

broad. They did provide copies of the disciplinary actions from the requested files. The magistrate judge found defendants' compliance to be sufficient, and following consideration of plaintiff's objections, the district court sustained the order. We review the district court's discovery order for abuse of discretion. *Gomez v. Martin Marietta Corp*., 50 F.3d 1511, 1520 (10th Cir. 1995).

On appeal, plaintiff contends that certain notes evincing occasions when a resident was criticized were not produced. Without any specificity or statement of relevance, plaintiff asserts that files and documents relating to " other residents" were "intentionally withheld." Appellant's Br. at 60 (emphasis in original). We have held that "an employer's general practices are relevant even when a plaintiff is asserting an individual claim for disparate treatment." *Gomez*, 50 F.3d at 1520. This grant is not, however, without limits, and the district court "is given wide discretion in balancing the needs and rights of both plaintiff and defendants." *Id.* (quotation omitted).

When, as is apparent here, a plaintiff brings an initial action without any factual basis evincing specific misconduct by the defendants and then bases extensive discovery requests upon conclusory allegations in the hope of finding the necessary evidence of misconduct, that plaintiff abuses the judicial process. Therefore, the magistrate judge appropriately recognized that defendants' compliance was sufficient and the likely benefit of any further attempted fishing

-18-

expedition would be negligible. *See, e.g., Jarvis v. Nobel/Sysco Food Servs. Co.*, 985 F.2d 1419, 1423 n.4 (10th Cir. 1993).

In discovery matters, we believe the district court is in the best position to weigh the variables and determine the appropriate limits. *Cf. Moothart v. Bell*, 21 F.3d 1499, 1504 (10th Cir. 1994) (concluding that the abuse of discretion standard is appropriate in reviewing a trial court's evidentiary rulings because the trial court has the firsthand ability to view the witness or evidence and assess credibility and probative value). We agree that the district court allowed plaintiff ample discovery regarding the disciplinary treatment of other residents in the program. *See Gomez*, 50 F.3d at 1520 (concluding the district court did not abuse its discretion in limiting discovery in Title VII case where the plaintiff was provided abundant discovery). Therefore, we conclude the district court did not abuse its discretion in denying plaintiff's motion to compel.

### III. Discussion - No. 99-1391

In their cross-appeal, defendants challenge the district court's denial of their request for costs, a decision we review for an abuse of discretion. *See Klein v. Grynberg*, 44 F.3d 1497, 1506 (10th Cir. 1995). Federal Rule of Civil Procedure 54(d) allows an award of costs to prevailing parties. The Rule states that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." Fed. R. Civ. P. 54(d)(1).

"This court has held that Rule 54(d) creates a presumption that the prevailing party shall recover costs." *Klein*, 44 F.3d at 1506. Moreover, the district court "must provide a valid reason for not awarding costs to a prevailing party." *Cantrell v. International Bhd. of Elec. Workers,* 69 F.3d 456, 459 (10th Cir. 1995).

Here, the district court summarily denied an award of costs to defendants without explanation. Thus, we have no basis for judging whether the court abused its discretion. Therefore, the part of the district court's judgment decreeing that each party shall bear his own costs is reversed and the matter is remanded to the trial court for further consideration of defendants' request for costs.

The judgment of the United States District Court for the District of Colorado is in case No. 99-1377 is AFFIRMED. The denial of costs appealed in case No. 99-1391 is REVERSED, and the matter is REMANDED for further proceedings consistent with this order and judgment.