Curtis D. BENNETT, Plaintiff,

v.

EMERSON ELECTRIC
CO., Defendant.

No. 00–2335–JWL.

United States District Court,
D. Kansas.

Aug. 28, 2001.

David W. Hauber, Casey L. Griffith, Baty & Holm, P.C., Kansas City, MO, for plaintiff.

John D. Dunbar, Kelly S. Moothart, Daniels & Kaplan, P.C., Kansas City, MO, for defendant.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiff filed suit against defendant, his former employer, alleging age discrimination, fraudulent and negligent misrepresentation, breach of contract and violations of the Kansas Wage Payment Act. This matter is presently before the court on defendant's motion for summary judgment (doc. # 72). As set forth in more detail below, defendant's motion is denied in its entirety.

### I. Facts

The following facts are either uncontroverted or related in the light most favorable to plaintiff, the nonmoving party. Defendant manufactures electrical equipment including power tools. In 1998, defendant established a significant business relationship with Home Depot whereby defendant began manufacturing a particular

brand (RIDGID) of power tool products to be distributed exclusively by Home Depot. In addition, defendant agreed to become a partial sponsor of the Home Depot NASCAR vehicle. In that regard, defendant agreed to supply personnel to promote its RIDGID line of power tools at NASCAR events and at Home Depot stores. This new enterprise between defendant and Home Depot was called the Trailblazer program.

In the fall of 1998, defendant began searching for an individual to develop and maintain the Trailblazer program. As there was a limited amount of time to prepare for the first racing event, defendant considered it important to find someone who already had the ability and knowledge to train other employees. While the record does not reflect how or where defendant found plaintiff, plaintiff eventually interviewed with defendant for the Trailblazer position. According to plaintiff, he specifically told defendant's president, David Pringle, during the interview process that he was looking to work only for a company with which he could finish his career. Plaintiff testified that Mr. Pringle assured him that this would be "no problem." Plaintiff further testified that he made it clear to Mr. Pringle that he wanted a job that would last as long as he could work or until he decided to retire. According to plaintiff, Mr. Pringle again responded, "no problem." Moreover, Tim Ferry, defendant's vice president and general manager, testified that at the time of plaintiff's interview it was his intent to employ individuals hired for the Trailblazer program for at least the initial length of the program, or three years. Mr. Ferry further testified that he may have communicated this intent to plaintiff during his interview. In any event, in November 1998, defendant hired plaintiff as its National NASCAR Events Manager. Plaintiff was 56 years old at the time. Plaintiff began his employment on November 15,

1998 and it was his responsibility to develop the Trailblazer program. In that regard, he was also responsible for hiring, training and supervising employees.

According to defendant, plaintiff struggled with his job from the very beginning. On December 11, 1998, less than one month after beginning his employment, plaintiff received a memorandum from his immediate supervisor, Brian Sponsler, in which Mr. Sponsler criticized various aspects of plaintiff's performance and conduct. The memorandum raised five specific issues. The first issue focused on plaintiff's apparent efforts to obtain from defendant additional money to cover the costs of his car insurance, gasoline and lease signing costs. In that regard, Mr. Sponsler reiterated that plaintiff's compensation package included a $500 per month automobile allowance inclusive of all related expenses. Mr. Sponsler advised plaintiff in the memorandum that defendant would not process plaintiff's claim for additional expenses beyond defendant's $500 monthly commitment. The second issue raised in the memorandum focused on plaintiff's apparent efforts to obtain from defendant a "per diem" for meal expenses. Mr. Sponsler clarified in the memorandum that defendant did not have a per diem policy for meals and that defendant would only reimburse employees for actual meal expenses when such requests were accompanied by receipts. Next, Mr. Sponsler expressed concern about plaintiff asking expense-related questions to human resources personnel and accounting personnel instead of directing such questions to him. According to the memorandum, plaintiff was supposed to direct all questions concerning the appropriateness of a particular expense to Mr. Sponsler. Mr. Sponsler also criticized plaintiff's efforts with respect to hiring support personnel. In that regard, plaintiff had been contacting potential candidates from plaintiff's

former employer and arranging interviews with those candidates in violation of a Confidentiality and Restrictions Agreement that he had signed with his former employer. Plaintiff never advised anyone at defendant about this agreement and defendant did not learn about the agreement until defendant's former employer, Shopsmith, Inc., contacted defendant and threatened legal action. In addition, Mr. Sponsler expressed concern about plaintiff's lack of urgency in pursuing other potential, non-Shopsmith candidates. Finally, under a paragraph entitled "Personal Integrity," Mr. Sponsler reiterated the highly visible and significant nature of plaintiff's position and the Trailblazer program. He cautioned plaintiff to consider the next sixty days of his employment as probationary. In closing, Mr. Sponsler indicated that in his seventeen years of sales and marketing management experience, he had "never encountered a new hire's first 30 days of employ as strange as these."

On January 11, 1999, plaintiff received another memorandum from Mr. Sponsler. In this memorandum, Mr. Sponsler reprimanded plaintiff for leaving work before 1:00 p.m. to catch a flight home on the "last day of preparation before training of the new hires [was] scheduled to begin." According to Mr. Sponsler, plaintiff left before his sections of the new training manual were completed, approved and duplicated. In essence, the memorandum questioned plaintiff's commitment to his position and his ability to become a "real team member."

On February 12 through February 14, 1999, the first Trailblazer NASCAR event was held in Daytona, Florida. According to defendant, plaintiff demonstrated a "reluctance to lead and perform" at the event. Mr. Sponsler testified that plaintiff arrived late at the racetrack, after defendant's demonstration trailer had been assembled by other team members. Mr. Sponsler also testified that plaintiff "stood around" instead of engaging potential customers. It is undisputed that on at least one occasion at the event, plaintiff failed to wear safety goggles while operating a power tool. When a Home Depot executive told plaintiff he needed to wear safety goggles and to provide similar goggles for people in the immediate area, plaintiff responded with something to the effect of "he had been doing this for 30 years and thought he knew what he was doing."

Within a few days of the Daytona event, defendant decided to terminate plaintiff's employment. While several individuals were involved in the termination decision, the decision was based in large part on Mr. Sponsler's recommendation. On the same day that plaintiff was discharged, Mr. Sponsler proposed the promotion of Jim Dufford, a 29–year–old. Accordingly, Mr. Dufford was promoted to plaintiff's position. Just two months earlier, defendant was not even sure whether Mr. Dufford was the "right fit" for the Trailblazer program in any capacity.

Additional facts will be provided as they pertain to plaintiff's particular claims.

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." Id. (citing Anderson, 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Id. at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. Id. at 671 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256, 106 S.Ct. 2505; see Adler, 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. Anderson, 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." Adler, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." Id.

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." Celotex, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## III. Age Discrimination

Plaintiff alleges that defendant terminated his employment on the basis of age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq. The court analyzes ADEA claim under the three-step framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See Munoz v. St. Mary–Corwin Hosp., 221 F.3d 1160, 1165 (10th Cir. 2000); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (assuming, without deciding, that McDonnell Douglas framework is applicable to ADEA cases). As the Tenth Circuit recently reiterated, a plaintiff relying on McDonnell Douglas bears the initial burden of establishing a prima facie case by a preponderance of the evidence. See Munoz, 221 F.3d at 1165. One way a plaintiff in an ADEA suit may establish a prima facie case of wrongful termination is by showing that (1) he belongs to a protected class; (2) he was qualified for his job; (3) despite his qualifications, he was discharged; and (4) he was replaced by a younger person. See id. If the plaintiff establishes his prima facie case, a rebuttable presumption arises that the defendant unlawfully discriminated against him. Id. The defendant must then articulate a legitimate, nondiscriminatory reason for the adverse employment action suffered by the plaintiff. Id. If the defendant is able to articulate a valid reason, the plaintiff can avoid summary judgment only if he is able to show that a genuine dispute of material fact exists as to whether the defendant's articulated reason was pretextual. Id.

### A. Plaintiff's Prima Facie Case and the "Same Actor" Inference

██ While defendant concedes that plaintiff is a member of the protected

class, that plaintiff was discharged, and that plaintiff was replaced with a younger person, defendant maintains that summary judgment is appropriate because plaintiff cannot establish the second element of his prima facie case—that he was qualified for his job—because he was not doing satisfactory work. In support of its argument that plaintiff was not doing satisfactory work, defendant emphasizes that plaintiff's unsatisfactory work was the reason for his discharge. In essence, then, defendant urges the court to consider its proffered nondiscriminatory reasons for discharging plaintiff in connection with analyzing plaintiff's prima facie case. Stated another way, defendant suggests that plaintiff must disprove defendant's proffered reasons for its employment decisions in order to establish his prima facie case. As the Tenth Circuit has recognized, such a legal analysis would inappropriately short-circuit the *McDonnell Douglas* framework at the prima facie stage and frustrate plaintiff's ability to establish that defendant's proffered reasons are pretextual. *See Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1316 n. 11 (10th Cir.1999). Thus, the court will not analyze defendant's assessment of plaintiff's performance at the prima facie stage. Rather, for purposes of assessing plaintiff's prima facie case, the court need only conclude that plaintiff has shown through credible evidence, including his own testimony, that he was minimally qualified for the position he held, even if defendant disputes that evidence. *See id.* Here, plaintiff has come forward with evidence that his performance was adequate and that, at least in his own mind, he was performing all the duties of his job. Accordingly, the court concludes that plaintiff has sufficiently es-

tablished a prima facie case of discriminatory discharge.

■ Defendant next suggests that no presumption of discrimination arises from plaintiff's discharge because the same individuals hired and fired plaintiff within in a short time frame. Several courts have recognized that "when 'the hirer and firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring,' there is a strong inference that discrimination was not a motivating factor in the employment action taken." *McKinsey v. Sentry Ins.*, No. 90–2387–Z, 1992 WL 101686, at *4 (D.Kan. Apr. 23, 1992) (quoting *Proud v. Stone*, 945 F.2d 796, 797 (4th Cir.1991)), *aff'd*, 986 F.2d 401 (10th Cir. 1993). The court, however, is unwilling to apply this narrow principle in this case. While there is evidence that many of the individuals who were involved in hiring plaintiff were also involved in the decision to discharge plaintiff, plaintiff's evidence demonstrates that additional individuals not involved in the discharge decision were involved in the hiring decision. Thus, the "same actor" inference is inapplicable in this context. *See O'Bryan v. KTIV Television*, 64 F.3d 1188, 1192–93 (8th Cir.1995) (refusing to apply "same actor" inference where individual who hired plaintiff was not the only person responsible for plaintiff's termination—two other individuals "played important roles in that decision-making process").[1]

### B. Defendant's Proffered Reasons

Because plaintiff has set forth sufficient facts establishing the elements of his prima facie case, the burden shifts to defendant to produce evidence of a legitimate

---

1. In its reply brief, defendant does not address plaintiff's arguments and evidence concerning the "same actor" inference. In fact, defendant's reply brief makes no mention at all of the "same actor" inference. Thus, the court presumes that defendant has abandoned the argument.

nondiscriminatory reason for plaintiff's discharge. According to defendant's evidence, it discharged plaintiff for performance-related reasons as specifically set forth in Mr. Sponsler's memoranda of December 11, 1998 and January 11, 1999 in addition to plaintiff's conduct at the NASCAR event on February 12–14, 1999. Defendant has satisfied its "exceedingly light" burden to provide a nondiscriminatory reason for its actions. *See Anaeme v. Diagnostek, Inc.,* 164 F.3d 1275, 1279 (10th Cir.1999).

*C. Plaintiff's Evidence of Pretext/Age Animus*

■ To establish pretext, then, plaintiff must show either that defendant's discharge decision was more likely motivated by plaintiff's age or that defendant's proffered explanations for its decision are unworthy of credence. *See Munoz v. St. Mary–Corwin Hosp.,* 221 F.3d 1160, 1167 (10th Cir.2000). As the Supreme Court recently held, a prima facie case of discrimination coupled with sufficient ● evidence of pretext is sufficient as a matter of law to show intentional discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 147–48, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Pretext "can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action

that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Munoz,* 221 F.3d at 1167 (quoting *Hardy v. S.F. Phosphates Ltd.,* 185 F.3d 1076, 1080 (10th Cir.1999)). As set forth below, plaintiff's evidence, taken as a whole, is sufficient to cast at least some doubt on defendant's proffered reasons. Moreover, plaintiff has come forward with some evidence suggesting that age may have been a determinative factor in defendant's decision to terminate plaintiff's employment. For these reasons, a trial is required on plaintiff's ADEA claim.

■ As set forth above, defendant contends that it discharged plaintiff in light of a series of performance-related problems as evidenced in the December 11, 1998 and the January 11, 1999 memoranda and culminating in plaintiff's conduct at the February 1999 Daytona event. As an initial matter, the court notes that plaintiff has not discredited each specific issue raised in the memoranda and each issue raised in connection with the Daytona event.[2] Defendant, however, does not suggest that any particular issue in and of itself motivated the termination decision or that any particular issue was more significant than other issues. Rather, defendant suggests that the "totality of the circumstances" (*i.e.,* plaintiff's performance problems tak-

---

**2.** With the exception of the safety goggle incident and the comment he made to the Home Depot executive, incidents which plaintiff does not dispute, plaintiff attempts to discredit each of defendant's proffered reasons. Plaintiff's efforts, however, are unavailing. With respect to the Daytona event, for example, plaintiff simply asserts that he arrived late because of "unexpected traffic" and that his coworkers could not have been working for more than ten minutes by the time he arrived. Such testimony, however, does not dispute defendant's evidence that plaintiff was late to the event and that his coworkers had

to assemble the demonstration trailer without his assistance. Similarly, with respect to the confidentiality agreement that he signed with his former employer, plaintiff merely asserts that he did not participate in interviewing those candidates but only facilitated the interview process. He further asserts that no one at defendant ever asked him if he had signed such an agreement. Again, these assertions do not in any way demonstrate that defendant was not, in fact, concerned that plaintiff had failed to disclose the existence of the confidentiality agreement.

en as a whole) resulted in plaintiff's termination. Thus, the court concludes that plaintiff's failure to discredit each and every reason set forth in the memoranda and raised in connection with the Daytona event is not fatal to his ADEA claim, particularly in light of plaintiff's additional evidence that age may have been a determinative factor in defendant's decision. *See, e.g., Wolf v. Buss (America) Inc.*, 77 F.3d 914, 920 (7th Cir.1996) (a plaintiff may still withstand summary judgment even if he or she fails to cast doubt upon all of an employer's proffered reasons particularly in those cases in which the "multiple grounds" offered by the employer for the adverse action of which the plaintiff complains are so intertwined, or the pretextual character of one of them so fishy and suspicious).

With respect to the December 11, 1998 memorandum, plaintiff highlights Mr. Sponsler's testimony that neither the automobile allowance issue nor the meal expenses issue were reasons for which plaintiff was being reprimanded but rather were simply issues on which Mr. Sponsler was providing clarification. Plaintiff's evidence also suggests that on the occasions when he asked other individuals expense-related questions, Mr. Sponsler was on vacation and unavailable to answer any questions. With respect to the January 11, 1999 memorandum in which Mr. Sponsler reprimanded plaintiff for leaving the office prior to the completion of the training manual, plaintiff's evidence suggests that he specifically asked Mr. Sponsler if he could leave the office at 1:00 p.m. to catch a flight home and Mr. Sponsler expressly gave him permission to do so and did not indicate that leaving early was problematic at all. If a jury believed plaintiff's testimony, then it could reasonably conclude that Mr. Sponsler was not really concerned about plaintiff leaving early as suggested in the January 11, 1999 memorandum and that the issues raised in the January 11, 1999 memorandum were pretextual.

In addition to showing that defendant's proffered explanations could be pretextual, plaintiff has introduced evidence suggesting that age may have been a determinative factor in defendant's decision to terminate his employment. According to plaintiff, less than two months prior to his discharge, Mr. Sponsler made two age-based remarks to plaintiff. First, when discussing various hiring issues, Mr. Sponsler allegedly said to plaintiff that he preferred younger people because he could manage them better. Second, when comparing the age of Jim Dufford to other, older regional managers, Mr. Sponsler allegedly stated to plaintiff, "I would rather have a guy in his late 20s or 30s anytime than an older one-I can train 'em." Although these comments were not directed toward plaintiff, a reasonable jury could infer, in light of Brian Sponsler's involvement in the decision to terminate plaintiff's employment and the fact that Brian Sponsler was plaintiff's immediate supervisor, that similar beliefs motivated Brian Sponsler's opinion that plaintiff needed to be replaced. This is particularly true in light of the close proximity of these comments to the termination decision.

Defendant, of course, contends that any such comments allegedly made by Mr. Sponsler are merely "stray remarks" and, as such, are insufficient to raise an inference of pretext. *See Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1140–41 (10th Cir.), *cert. denied*, 531 U.S. 876, 121 S.Ct. 182, 148 L.Ed.2d 125 (2000). Under the circumstances described by plaintiff, however, Mr. Sponsler's alleged remarks cannot be so easily discounted and the court concludes that plaintiff has demonstrated a sufficient nexus between the alleged comments and the termination decision. In light of the specific facts presented by

plaintiff-that Mr. Sponsler was his immediate supervisor; that the comments were made less than two months prior to plaintiff's discharge; and that the termination decision was based primarily on Mr. Sponsler's recommendation-a reasonable inference from the alleged comments is that Mr. Sponsler had preconceived notions premised on plaintiff's age regarding his own ability to manage and supervise plaintiff and ultimately terminated him based at least in part on his age bias. *See id.* at 1141.

In sum, while this case presents a close question on summary judgment, the court concludes that plaintiff's evidence, taken as a whole, is sufficient to cast some doubt on defendant's proffered reasons for plaintiff's discharge and that age may have been a determinative factor in defendant' decision. Summary judgment is, therefore, denied.

## IV. Kansas Wage Payment Act

Plaintiff's claim under the Kansas Wage Payment Act, K.S.A. §§ 44–313 et seq., is based on his allegations that defendant obligated itself to pay for plaintiff's car lease and that plaintiff's car lease, in essence, was part of plaintiff's compensation. Stated another way, plaintiff alleges that defendant was obligated to continue to pay for plaintiff's car lease even after plaintiff's discharge. In support of his claim, plaintiff alleges that after his employment began, he was instructed by defendant's vice president of human resources to lease a car for use on company business.

In support of its motion for summary judgment, defendant simply denies that any oral representations were made about plaintiff's car lease and relies instead on a November 1998 letter sent to plaintiff in which defendant confirmed its offer of employment and reiterated the $500 per month car allowance. Of course, because plaintiff alleges that defendant orally

agreed to pay for plaintiff's lease subsequent to the confirmation letter of November 1998, the mere fact that the letter does not suggest that defendant would pay for plaintiff's car lease is irrelevant. Defendant's motion is denied on this basis, then. Defendant's only other argument in support of its motion is that in January 1999, plaintiff essentially admitted that his car was "not a company car but his personal car" and that he was responsible for making the monthly payments and paying for insurance and maintenance costs with the $500 per month allotted to him. This, however, does not address whether defendant obligated itself to pay $500 per month for each month of plaintiff's car lease when it instructed plaintiff to lease a car. Defendant's motion is therefore denied on this basis as well.

That having been said, however, the court has serious doubts about whether plaintiff's car lease constitutes "earned wages" subject to a lump-sum payment as contemplated by the Kansas Wage Payment Act. *See* K.S.A. §§ 44–313(c) & 44–315(a). Neither party, however, has provided the court with any briefing on this issue. In the absence of any effort from the parties (particularly defendant as it is defendant's motion) to flesh out the nature of plaintiff's claim and the applicability of the Kansas Wage Payment Act, the court declines to address this issue. At the time of trial, however, the court will expect the parties to provide additional briefing on this claim.

## V. Fraudulent Misrepresentation, Negligent Misrepresentation and Breach of Contract

Plaintiff's remaining claims for fraudulent misrepresentation, negligent misrepresentation and breach of contract are based on the same factual allegations-namely, that defendant, at the time it hired

plaintiff, promised to employ plaintiff for at least three years or, in the alternative, until his retirement.[3] As an initial matter, the court notes that defendant in its motion has grouped these three claims together and has presented the same general arguments with respect to all claims. Defendant's motion, however, is aimed primarily at plaintiff's contract claim and defendant provides no law about or analysis of plaintiff's misrepresentation claims and, more specifically, defendant fails to provide any discussion whatsoever concerning whether plaintiff's evidence is sufficient to support the particular elements of those claims. Thus, because the court rejects each of defendant's general arguments with respect to all three claims (but aimed primarily at the contract claim), and because defendant has failed to offer any additional arguments with respect to plaintiff's misrepresentation claims in particular, summary judgment on all three claims is denied.

The court turns, then, to the merits of defendant's motion with respect to plaintiff's remaining claims. In that regard, defendant's motion is based primarily on defendant's denial that it made any representations to plaintiff that he had a contract of employment for three years, the rest of his career, or any other time period. Plaintiff has come forward with evidence, however, that David Pringle, defendant's president, essentially assured him that he could finish his career with defendant. Plaintiff's evidence also demonstrates that Tim Ferry, defendant's general manager, may have communicated to plaintiff during the interview process that he intended to hire individuals for the Trailblazer program for at least three years. Thus, defendant's denials of any

such representations, however adamant, are simply not relevant in light of plaintiff's evidence to the contrary. Thus, defendant's motion summary judgment on this basis is denied. *See White v. Midwest Office Technology, Inc.*, 5 F.Supp.2d 936, 956 (D.Kan.1998) (plaintiff's evidence sufficient to create a genuine issue of material fact on contract claim where she alleged that employer guaranteed her employment "until her retirement").

 Next, defendant suggests that summary judgment is warranted because the letter sent to plaintiff confirming defendant's offer of employment is devoid of any reference to "lifetime" employment or employment for a specific term. The nature of defendant's argument in this regard is unclear. To the extent defendant means to suggest that plaintiff's evidence of any oral promises is somehow inadmissible in light of the written letter, the argument is meritless. The written letter is clearly not an employment contract purporting to encompass all aspects of plaintiff's employment. It does not make any reference whatsoever to the nature or length of plaintiff's employment. The letter simply summarizes the parties' prior oral agreement concerning plaintiff's compensation and notes that the offer is contingent upon plaintiff's passing a drug screen and defendant completing necessary reference checks. Thus, the letter is insufficient to prove as a matter of law that plaintiff was not promised lifetime employment or a three-year contract. *Cf. Land*, 114 F.Supp.2d at 1147 (summary judgment warranted on breach of contract claim where, despite evidence that employer promised employment until retirement, written employment contract signed by

---

**3.** The parties characterize plaintiff's contract claim as an "implied contract." In light of the express oral promises allegedly made by Mr. Pringle and Mr. Ferry, however, the court rejects this characterization. *See Land v. Midwest Office Tech., Inc.*, 114 F.Supp.2d 1121, 1146 n. 7 (D.Kan.2000).

both parties expressly stated that employment was at will).

Defendant also suggests that plaintiff could not have been given such assurances about continued employment in light of its evidence that no other employee has or has had an employment contract for a specific term. To the extent defendant is referring to written employment contracts, such evidence has no bearing on whether plaintiff was given oral promises of continued employment. Moreover, the mere fact that other employees were not given oral assurances of continued employment has no bearing on whether plaintiff was given such assurances, particularly in light of plaintiff's evidence that defendant needed to fill the Trailblazer position (a new, significant position in defendant's organization) fairly quickly and needed to fill it with someone with the knowledge and ability to train other people. In other words, plaintiff's evidence shows that plaintiff's position (and, thus, the hiring for plaintiff's position) was simply not analogous to other positions in defendant's organization. Summary judgment is denied on this basis.[4]

Finally, defendant argues that even assuming such representations were made, summary judgment is nonetheless appropriate because plaintiff knew he was required to perform his assigned duties in order to enjoy continued employment with defendant and that plaintiff's poor performance was well documented. As set forth above in connection with plaintiff's ADEA claim, however, whether plaintiff was performing his assigned duties is a fact question for the jury. This argument, then, is rejected.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc. # 72) is **denied.**

**IT IS SO ORDERED.**

---

4. Plaintiff's employment application contains the following provision:
 I understand and agree my employment is for no definite period and may, regardless of the period of payment of my wages or salary, be terminated at any time without any previous notice. I further understand that no company official has made any promises to the contrary or guaranteed me employment for any specified period of time.
 It is uncontroverted, however, that plaintiff never signed this provision despite being asked by defendant to do so.