Darnell HOLOPIREK, Plaintiff,

v.

**KENNEDY AND COE, LLC, Defendant.**

No. 02–2644–JWL.

United States District Court, D. Kansas.

Feb. 23, 2004.

John L. Hampton, Gilliland & Hayes, P.A., Lawrence, KS, for Plaintiff.

Katherine R. Schoofs, Rebecca L. McGinnis, Lathrop & Gage, LC, Kansas City, MO, for Defendant.

### MEMORANDUM & ORDER

LUNGSTRUM, District Judge.

Plaintiff filed suit against defendant, her former employer, alleging that defendant unlawfully terminated her employment on the basis of a perceived disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and the Kansas Act Against Discrimination, K.S.A. § 44–1001 et seq., on the basis of plaintiff's age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., and/or on the basis of plaintiff's gender in violation Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. This matter is presently before the court on defendant's motion for summary judgment on all of plaintiff's claims (doc. # 26). As set forth in more detail below, the motion is granted in part and denied in part. It is granted with respect to plaintiff's claim of gender discrimination and is otherwise denied.

## I. Facts

The following facts are either uncontroverted or related in the light most favorable to plaintiff, the nonmoving party. Defendant is a Kansas company that provides certified public accounting and consulting services. Plaintiff was hired by defendant in June 1998 as a Special Events Coordinator based out of defendant's Great Bend, Kansas office. Throughout her tenure with defendant, plaintiff also held the titles of Marketing Coordinator and, most recently, Assistant Director of Sales and Marketing. Her primary responsibilities, however, remained in large part the same throughout her tenure and included handling marketing forms and brochures for educational seminars, helping with trade shows, coordinating marketing efforts with defendant's advertising agency, helping to create the firm's logo and putting together the firm's apparel catalog.

In January 2001, defendant moved its sales and marketing department from Great Bend, Kansas to Wichita, Kansas. At that time, plaintiff asked Bill Jenkins, defendant's CEO, if she could work from her home in Larned, Kansas instead of relocating to Wichita. Mr. Jenkins agreed to allow plaintiff to work remotely from her home in light of the nature of her work. During this same time frame, defendant hired a new Director of Sales and Marketing, Dixie Larson, and Ms. Larson became plaintiff's immediate supervisor. In July 2001, Ms. Larson completed an evaluation of plaintiff's performance in which she praised, among other things, plaintiff's success in working remotely and her ability to shift the focus of her position from marketing to both sales and marketing, consistent with defendant's increased emphasis on sales efforts rather than marketing efforts.

According to defendant, Ms. Larson and Mr. Jenkins, in the last quarter of 2001, evaluated plaintiff's remote position and her value to the sales and marketing de-

partment in light of the department's change in focus to an increased emphasis on sales. Ms. Larson avers that in early January 2002, she and Mr. Jenkins met and determined that plaintiff's skills were no longer needed in the department and that plaintiff's remote location was no longer working out. Ms. Larson further avers that she and Mr. Jenkins decided at that time to eliminate plaintiff's position and terminate her employment. Nonetheless, according to Ms. Larson, she wanted to advise plaintiff about her discharge in person rather than over the telephone and, thus, she waited to deliver the message until such time as she and plaintiff were both in the Wichita office.

In the meantime, on February 1, 2002, plaintiff contacted Ms. Larson and advised her that she had been diagnosed with diabetes and that she needed to take some time off that week to attend some informational classes concerning her diagnosis. Ms. Larson replied, "You don't have to tell me what diabetes is like, my dad has it." While defendant asserts that Ms. Larson was merely showing sympathy for plaintiff's situation, plaintiff testified that the statement was "harsh" and that Ms. Larson was clearly suggesting that she knew more about diabetes than plaintiff knew at that point. Less than a week later, on February 7, 2002, Ms. Larson contacted defendant's Director of Human Resources, Lola Fair, to inquire about the proper procedure for terminating an employee and informed Ms. Fair that she was "going to have a termination in her department."

On February 12, 2002, plaintiff had occasion to be in the Wichita office and Ms. Larson informed her that her employment was terminated. Plaintiff left the office and telephoned Mr. Jenkins to discuss what had happened. According to plaintiff, she and Mr. Jenkins talked for almost an hour and Mr. Jenkins advised her that he had just learned about Ms. Larson's

intentions to terminate plaintiff's employment two days earlier-on February 10, 2002. Plaintiff further testified that when she asked Mr. Jenkins if Ms. Larson had told him why she had decided to terminate plaintiff's employment, Mr. Jenkins replied "she really didn't say."

Additional facts will be provided as they relate to plaintiff's particular claims.

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Spaulding v. United Transp. Union,* 279 F.3d 901, 904 (10th Cir.2002). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Wright ex rel. Trust Co. of Kansas v. Abbott Laboratories, Inc.,* 259 F.3d 1226, 1231–32 (10th Cir.2001) (citing *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir.1998)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler,* 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Spaulding,* 279 F.3d at 904 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need

simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Adams v. American Guarantee & Liability Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir.2000) (citing *Adler*, 144 F.3d at 671).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir.2001). Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Mitchell v. City of Moore, Oklahoma*, 218 F.3d 1190, 1197–98 (10th Cir.2000) (quoting *Adler*, 144 F.3d at 671). To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibits incorporated therein." *Adams*, 233 F.3d at 1246.

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and in-expensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1); *see also Kaster v. Safeco Ins. Co. of Am.*, 82 Fed. Appx. 28, 30 (10th Cir. Dec.3, 2003) (affirming the district court's grant of summary judgment in favor of defendant in an ADEA case where the plaintiff had failed

to present evidence sufficient for a reasonable jury to conclude that Safeco's employment decisions were age-related); *Young v. White*, 71 Fed.Appx. 819, 2003 WL 21940941, at *1–2 (10th Cir. Aug.14, 2003) (affirming district court's grant of summary judgment in favor of defendant in race discrimination and retaliation context).

## III. Disability Discrimination

■ Plaintiff asserts that defendant regarded plaintiff as disabled in violation of the Americans with Disabilities Act ("ADA") and the Kansas Act Against Discrimination ("KAAD") by terminating her employment just two weeks after learning that plaintiff had been diagnosed with diabetes.[1] Defendant moves for summary judgment on this claim, contending that plaintiff cannot establish a prima facie case of disability discrimination and, in any event, that she cannot show that defendant's legitimate, nondiscriminatory reasons for terminating plaintiff's employment are pretextual. As explained more fully below, the court concludes that plaintiff has set forth evidence sufficient to establish her prima facie case and that plaintiff has satisfied her burden of showing that defendant's proffered reasons for terminating plaintiff's employment are pretextual. Thus, a jury trial is required on plaintiff's disability claim and defendant's motion for summary judgment on this claim is denied.

### A. Plaintiff's Prima Facie Case

■ The ADA prohibits employment discrimination on the basis of an employee's disability, stating that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the

---

1. The court applies the same standards and burdens to plaintiff's KAAD claim as those applied to her ADA claim. *See Aramburu v.*

*Boeing Co.*, 112 F.3d 1398, 1403 n. 3 (10th Cir.1997) (citing *Woods v. Midwest Conveyor Co.*, 231 Kan. 763, 767, 648 P.2d 234 (1982)).

disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." *See Doebele v. Sprint/United Management Co.,* 342 F.3d 1117, 1128 (10th Cir.2003) (quoting 42 U.S.C. § 12112). To establish a prima facie case of disability discrimination under the Act, a plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) she is qualified for her employment position; and (3) the defendant discriminated against her because of her disability. *See id.* (citing *Poindexter v. Atchison, Topeka & Santa Fe Ry.,* 168 F.3d 1228, 1230 (10th Cir.1999)).

■ Defendant's first argument in support of its motion for summary judgment is that plaintiff cannot establish the third prong of her prima facie case in that defendant made the decision to terminate plaintiff's employment long before it learned that plaintiff had been diagnosed with diabetes. In other words, defendant asserts that it is simply not possible that defendant terminated plaintiff's employment "because of" her disability as defendant had no knowledge of plaintiff's disability at the time it made the decision to terminate her employment. According to defendant, Dixie Larson and Bill Jenkins decided in early January 2002 that plaintiff's skills were no longer needed for the department and that her remote location was not working out; thus, Ms. Larson

and Mr. Jenkins agreed at that time that plaintiff's employment would be terminated. Defendant further asserts that the decision regarding plaintiff's employment, although made in early January 2002, was not communicated to plaintiff until February 12, 2002, when plaintiff and Ms. Larson were both in the Wichita office and Ms. Larson could deliver the message to plaintiff in person rather than over the telephone.

The affidavits submitted by Ms. Larson support defendant's assertions that the termination decision was made by Ms. Larson and Mr. Jenkins in January 2002 after they consulted and jointly determined that plaintiff's remote position was no longer working out and that her skills were no longer needed in the department.[2] However, plaintiff testified in her deposition that she telephoned Mr. Jenkins on February 12, 2002 after her employment was terminated and that she and Mr. Jenkins talked for almost an hour. According to plaintiff, Mr. Jenkins advised her that he had just learned about Ms. Larson's intentions to terminate plaintiff two days earlier-on February 10, 2002. Plaintiff further testified that when she asked Mr. Jenkins if Ms. Larson had told him why she had decided to terminate plaintiff's employment, Mr. Jenkins replied "she really didn't say." This evidence, then, reflects that Mr. Jenkins did not take part in the decision to terminate plaintiff's employment and certainly suggests that Mr. Jenkins did not discuss plaintiff's employ-

**2.** Defendant submitted a second affidavit of Ms. Larson with its reply brief and plaintiff filed a motion for leave to file a surreply, arguing that the second affidavit was not proper rebuttal evidence. In granting plaintiff's motion to file a surreply, the court indicated that it would utilize plaintiff's surreply only if it concluded that Ms. Larson's affidavit was not the proper subject of a reply brief. The court further indicated that it would disregard plaintiff's surreply if it determined that

Ms. Larson's affidavit was proper rebuttal evidence. Upon analyzing defendant's motion for summary judgment, however, the court has concluded that Ms. Larson's second affidavit, regardless of whether it was properly submitted, simply does not assist defendant in any event; in fact, the court has denied summary judgment with respect to those issues on which the second affidavit touches. Thus, the court has not considered plaintiff's surreply.

ment with Ms. Larson in January 2002. Moreover, the record is devoid of any testimony from Mr. Jenkins concerning these subjects.

In addition, there is no contemporaneous evidence suggesting that the decision to terminate plaintiff's employment was actually made in January 2002. While there is some contemporaneous evidence suggesting that a meeting between Ms. Larson and Mr. Jenkins occurred on January 8, 2002 in the form of a notation from Mr. Jenkins' daily calendar reflecting a 12:00 meeting with "Dixie," taken in the light most favorable to plaintiff, as the nonmoving party, this evidence shows at most that a meeting was scheduled; it does not show that the meeting actually occurred.[3] Finally, Ms. Larson did not seek advice from Lola Fair, defendant's Director of Human Resources, concerning the way in which to handle plaintiff's discharge until February 7, 2002–just days after learning of plaintiff's diagnosis-and when she did seek such advice, she did not inform Ms. Fair that the decision to terminate plaintiff's employment had been made previously and that she was now ready to act on that decision; she simply informed Ms. Fair on February 7 that she "was going to have a termination in her department." In light of all of the foregoing circumstances, a jury must resolve whether the decision to terminate plaintiff's employment was made in January 2002. Defendant's argument concerning the third prong of plaintiff's prima facie case, then, is rejected.

Defendant next asserts that plaintiff cannot establish a prima facie case of disability discrimination because she cannot show that she is disabled within the meaning of the ADA. The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *See id.* at 1128–29 (quoting 42 U.S.C. § 12102(2)). Plaintiff asserts only that she is disabled under the "regarded as" definition of disability.[4] There are two ways in which individuals may fall within this statutory definition-an employer mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities when, in fact, the individual does not have an impairment, or an employer mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. *See id.* at 1132 (citing *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999)). In both cases, it is necessary that an employer entertain misperceptions about the individual-it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting. *See id.* at 1132–33 (citing *Sutton,* 527 U.S. at 489, 119 S.Ct. 2139). Here, plaintiff asserts that defendant mistakenly believed that plaintiff's actual impairment, diabetes, substantially

---

**3.** The page from Mr. Jenkins' daily calendar was submitted by defendant in connection with its reply brief and plaintiff filed a motion for leave to file a surreply on the basis that the evidence was not proper rebuttal evidence and should have been submitted with defendant's opening brief. For the same reasons discussed above with respect to Ms. Larson's second affidavit, *see supra* note 2, the court has disregarded plaintiff's surreply and simply notes that Mr. Jenkins' calendar page has

not benefitted defendant at this juncture and, in fact, the court has denied summary judgment with respect to the only issue raised by that calendar page.

**4.** In the pretrial order, plaintiff asserted that her diabetes constituted an actual impairment that substantially limited one or more of her major life activities. She has abandoned that theory in response to defendant's motion for summary judgment.

**1232**

limited plaintiff's ability to work when, in fact, plaintiff's ability to work was not limited in any respect.

■ When the major life activity at issue is that of working, a plaintiff must show that she is unable to perform either a class of jobs or a broad range of jobs in various classes. *See id.* at 1133 (citing *Sutton,* 527 U.S. at 491–92, 119 S.Ct. 2139 (quoting 29 C.F.R. pt. 1630, App. § 1630.2(j)(3)(i))). Thus, a plaintiff asserting she is disabled under the "regarded as" definition of disability must show that her employer regarded her as having an impairment substantially limiting her ability to perform a broad range of jobs, rather than a single position, and that the employer's misperception was "based on 'myth, fear, or stereotype,' including concerns regarding safety, insurance, liability, and acceptance by coworkers and the public." *See id.* (citations and quotation omitted).

■ The court concludes that plaintiff has presented evidence creating a genuine issue of material fact concerning whether defendant regarded plaintiff's diabetes as substantially limiting her ability to work. As explained above, a reasonable jury could conclude that Ms. Larson made the decision to terminate plaintiff's employment within two weeks of learning that plaintiff had been diagnosed with diabetes. While it is true, as defendant contends, that an employer's mere knowledge of a diagnosis or impairment is insufficient to

establish that the employer "regarded" the employee as disabled, plaintiff's evidence here suggests not only a close temporal proximity between defendant's learning of plaintiff's diagnosis and her termination, but also a comment made by Ms. Larson to plaintiff at the time plaintiff told her about her diagnosis. Specifically, Ms. Larson, upon learning that plaintiff had been diagnosed with diabetes, said to plaintiff, "You don't have to tell me what diabetes is like, my dad has it." While defendant characterizes this statement as an empathetic one, plaintiff testified that she felt that the statement was "harsh" and that Ms. Larson was clearly suggesting that she knew more about diabetes than plaintiff knew at that point. Depending on the manner in which Ms. Larson made this statement, particularly in light of the close proximity between Ms. Larson learning of plaintiff's diagnosis and making the statement, a reasonable jury could conclude that Ms. Larson's statement reflected concerns about any deleterious effects that plaintiff's condition might have and corresponding fears about plaintiff's ability to work. Summary judgment on this issue, then, is denied. *See, e.g., Mathieu v. Gopher News Co.,* 273 F.3d 769, 777–78 (8th Cir.2001) (upholding jury verdict in favor of plaintiff on "regarded as" claim where evidence showed that employer terminated the plaintiff just four days after the plaintiff returned to work with various medical restrictions, including a forty pound lifting maximum and a forty hour week).[5]

5. In support of its motion for summary judgment on plaintiff's ADA claim, defendant relies in large part on the alleged factual similarities between this case and a case in which Judge VanBebber of this district granted summary judgment in favor of the employer, *Bost v. Headco Industries, Inc.,* 2003 WL 21939020 (D.Kan. Aug.4, 2003). As an initial matter, the court notes that it is not bound by another decision in this district-it is bound only by cases from the Tenth Circuit and the United States Supreme Court. In any event, the

facts as described by Judge VanBebber in *Bost* are different from those presented here in at least two key respects. First, it was apparently uncontroverted in *Bost* that the possibility of eliminating the plaintiff's position and terminating the plaintiff's employment was discussed prior to the employer receiving notice of the plaintiff's impairment. Second, the close temporal proximity between plaintiff advising Ms. Larson of her diagnosis and the decision to terminate her employment (assuming the jury does not believe that the

## B. The Pretext Analysis

■ As plaintiff has set forth sufficient evidence to establish a prima facie case with respect to her claim that defendant terminated her employment based on its perception that her diabetes would substantially limit plaintiff's ability to work, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for its decision. *See Davidson v. America Online, Inc.*, 337 F.3d 1179, 1189 (10th Cir.2003) (burden-shifting framework established in *McDonnell Douglas Corp. v. Green* generally applies to ADA disparate treatment claims). Defendant's evidence suggests that it decided to terminate plaintiff's employment because plaintiff's skills were no longer needed in light of defendant's emphasis on sales rather than marketing and because plaintiff's remote location was "no longer working out." Defendant has satisfied its "exceedingly light" burden to provide nondiscriminatory reasons for its actions. *See Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1279 (10th Cir.1999).

■■ Plaintiff, then, may resist summary judgment only by presenting evidence that defendant's reasons are pretextual (*i.e.*, unworthy of belief) or by otherwise introducing evidence of a discriminatory motive. *See Danville v. Regional Lab Corp.*, 292 F.3d 1246, 1250 (10th Cir.2002) (citing *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1137 (10th Cir. 2000)). Pretext "can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Id.* (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir.1997)). When assessing whether plaintiff has made an appropriate showing of pretext, the court considers the evidence as a whole. *Id.* (citation omitted). As explained below, the court concludes that plaintiff has satisfied her burden.

■ With respect to defendant's assertion that plaintiff's remote location was no longer working out, plaintiff highlights that in connection with her annual performance evaluation in July 2001, Ms. Larson praised plaintiff for doing "a great job working remotely" and characterized plaintiff's success in working remotely as an area of "high achievement." There is no indication in the record that Ms. Larson's assessment of plaintiff's ability to work remotely changed at any time between this evaluation and the time of plaintiff's discharge. This evidence, then, casts some doubt on whether plaintiff's remote location was in fact a reason for defendant's decision to terminate her employment. Moreover, when Ms. Larson told plaintiff during her termination meeting on February 12, 2002 that plaintiff's remote location was not working out, plaintiff asked whether she could keep her job if she moved to Wichita to work out of the Wichita office. According to plaintiff, Ms. Larson replied, "No." If a jury believed that plaintiff volunteered to move to Wichita and that Ms. Larson rejected that offer, then it could reasonably conclude that plaintiff's working from a remote location was not truly a driving force behind defendant's decision to terminate plaintiff's employment. In sum, plaintiff has made an appropriate showing of pretext as to this proffered reason.

Defendant's only other asserted reason for terminating plaintiff's employment is

decision was made in January 2002) was not present in *Bost*-the employer there made the final decision to terminate the plaintiff's em-

ployment at least two or three months after learning that the plaintiff suffered from depression.

that plaintiff's skill set was no longer needed given defendant's change in focus from marketing efforts to sales efforts. Plaintiff avers, however, that her position had already changed its focus from marketing to "sales and marketing" prior to her termination. In fact, in plaintiff's July 2001 annual performance evaluation, Ms. Larson's final comment on the evaluation was "I am impressed with how [plaintiff's] paradigm has shifted and is more focus [sic] on the sales and marketing aspect of this department rather than the marketing." A reasonable jury could conclude from this evidence that plaintiff had adapted to defendant's change in focus and that her skills were consistent with that change in focus. Moreover, the primary piece of evidence upon which defendant relies in support of its assertion that plaintiff's skill set was no longer needed is the affidavit testimony of Ms. Larson in which she states that she and Bill Jenkins discussed this issue in January 2002. As described above, however, factual questions exist as to whether the decisionmaking process actually occurred as described by Ms. Larson and, thus, Ms. Larson's stated rationale for the decision is similarly called into question-particularly in light of plaintiff's testimony that Mr. Jenkins essentially told her that he did not know why Ms. Larson decided to terminate plaintiff's employment.

The only other piece of evidence relied upon by defendant in support of this asserted reason is a series of notes written by Ms. Larson in preparation for the termination meeting with plaintiff. While it is not entirely clear from the record, it appears that these notes were written just prior to the termination meeting. In that case, the court believes that the timing of the drafting of the notes-just days after plaintiff advised Ms. Larson of her diagnosis-when taken in the light most favorable to plaintiff is sufficient to cast doubt on whether the true reasons for plaintiff's discharge were set forth in the notes, particularly in the absence of any contemporaneous evidence that the decision to terminate plaintiff's employment actually took place in January 2002.

For the foregoing reasons, the court concludes that plaintiff has come forward with evidence sufficient to withstand defendant's motion for summary judgment on plaintiff's disability discrimination claim. The motion, then, is denied and a jury must resolve the merits of plaintiff's claim.

## IV. Gender and Age Discrimination

In addition to asserting that defendant's termination of her employment was based on a perceived disability, plaintiff also asserts that defendant terminated her employment based on her gender in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and/or her age in violation of the Age Discrimination in Employment Act ("ADEA"). Defendant moves for summary judgment on these claims as well, contending that plaintiff cannot establish a prima facie case of discriminatory discharge and, again, that she cannot show that defendant's legitimate, nondiscriminatory reasons for terminating plaintiff's employment are pretextual.[6] As explained

---

**6.** With respect to plaintiff's Title VII sex discrimination claim, defendant also contends that plaintiff has failed to exhaust her administrative remedies and, thus, summary judgment is appropriate in favor of defendant on this claim. Specifically, defendant asserts that plaintiff requested a right-to-sue letter from the EEOC just one month after amending her charge to include a claim of sex discrimination and, thus, deprived the EEOC of the opportunity to investigate plaintiff's sex discrimination claim. Based on the Tenth Circuit's decision in *Walker v. United Parcel Service, Inc.*, 240 F.3d 1268 (10th Cir.2001), and the Circuit's rejection in that case of a

more fully below, the court concludes that plaintiff has shown the existence of genuine issues of material fact with respect to her prima facie case of gender and age discrimination. Moreover, the court concludes that plaintiff has come forward with sufficient evidence of pretext to survive summary judgment on her age discrimination claim. With respect to her claim of gender discrimination, however, the court concludes that plaintiff has not shown that defendant's proffered reasons for her discharge were a pretext for gender discrimination.

*A. Plaintiff's Prima Facie Case*

■ As with plaintiff's disability claim, plaintiff's gender and age claims are analyzed under the burden-shifting framework first set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under the *McDonnell Douglas* framework, plaintiff has the initial burden of establishing a prima facie case of discriminatory discharge, which requires her to show that she is a member of the class protected by the statute; that she was qualified for her position; that despite her qualifications, she was discharged; and that her position was not eliminated after her discharge or that someone else was hired to replace her (in the ADEA context, that she was replaced by a younger person though not necessarily someone outside the protected class). *See English v. Colorado Dept. of Corrections,* 248 F.3d 1002, 1008 (10th Cir.2001) (Title VII); *McKnight v. Kimberly Clark Corp.,* 149 F.3d 1125, 1128 (10th Cir.1998) (ADEA context). The parties in this case also agree that plaintiff may satisfy the fourth prong of her prima facie case by showing that she was treated less favorably than others not in the protected class. *See Bullington v. United Air Lines, Inc.,* 186 F.3d 1301, 1315–16 (10th Cir.1999).

In its motion for summary judgment, defendant contends that plaintiff cannot establish the fourth prong of her prima facie case because her job was simply eliminated (*i.e.,* no one replaced plaintiff) and she has no evidence that any similarly situated employees outside the protected class were treated more favorably. Curiously, plaintiff's initial response to this argument is that she should somehow be excused from having to satisfy the fourth prong and that the court should simply "assume" that she has satisfied it. Specifically, plaintiff states in her brief that where "defendant claims that it did not hire anyone to replace plaintiff, the fourth element of a prima facie case has not been stated clearly" and, when faced with such a case, "this court has simply assumed that plaintiff meets the fourth element as well." Plaintiff then asks that "that be done in this case as well."

The court declines to adopt plaintiff's approach. The case upon which plaintiff relies for her assertion that the fourth prong has not been clearly stated in those cases where the defendant claims it did not hire anyone to replace the plaintiff, *Munoz v. St. Mary–Corwin Hospital,* 221 F.3d 1160 (10th Cir.2000), simply does not stand for the proposition that plaintiff suggests. In *Munoz,* the Tenth Circuit recognized only that it had not yet decided whether the fourth prong in ADEA cases should be modified such that a plaintiff could establish the prong by showing either that his or her job had not been eliminated or that similarly situated younger employees were treated more favorably. *See id.* at 1166 n. 3. The *Munoz* court declined to address that issue because the plaintiff in that case could not satisfy his prima facie case under either formulation of the fourth prong. *See id.* Finally, in the case that plaintiff cites for her suggestion that this court

nearly identical argument, the court rejects defendant's argument.

should simply assume that the fourth prong has been satisfied, *Campbell v. Meredith Corp.*, 260 F.Supp.2d 1087 (D.Kan. 2003), Judge Robinson of this district assumed that the ADEA plaintiff had met the fourth prong of his prima facie case only because the court ultimately concluded that plaintiff, even assuming he had established a prima facie case, had not shown that the defendant's proffered non-discriminatory reasons were pretextual. *See id.* at 1104. Thus, the court granted summary judgment in favor of the defendant on the plaintiff's ADEA claim in any event and did not need to decide whether plaintiff had established a prima facie case.[7]

 At the very least, then, plaintiff must show either that her position was not eliminated and that someone else was hired to replace her or that similarly situated employees (male employees or younger employees) were treated more favorably.[8] According to defendant, plaintiff cannot show either of these alternative bases. As explained below, the court concludes that plaintiff has shown the existence of a genuine dispute of material fact concerning whether she was replaced after her discharge. Thus, plaintiff has satisfied her burden (at least for summary judgment purposes) and the court need not address whether plaintiff has evidence that defendant treated similarly situated employees more favorably.

According to defendant, it is beyond dispute that plaintiff's position was eliminated because no one was hired to replace plaintiff and her duties were simply spread out among several existing employees. Assuming this were true, and that the existing employees continued to perform their own duties in addition to plaintiff's duties, the court agrees that plaintiff would not be able to establish that she was replaced. *See, e.g., McMahen v. Gaffey, Inc.*, 52 Fed. Appx. 90, 92 (10th Cir. Oct.25, 2002) ("Spreading the former duties of a terminated employee among the remaining employees does not constitute replacement.") (quoting *Lilley v. BTM Corp.*, 958 F.2d 746, 752 (6th Cir.1992)); *Cruz–Ramos v. Puerto Rico Sun Oil Co.*, 202 F.3d 381, 384 (1st Cir.2000) ("When the functions of a furloughed employee are absorbed into the responsibilities of existing employees, who perform these duties along with their own, no legally cognizable 'replacement' occurs.").

According to plaintiff's evidence, upon her discharge, most of plaintiff's responsibilities were taken over by Keri Sanders who, at the time of plaintiff's discharge, was serving as the Administrative Assistant to the Sales and Marketing Department (essentially, she was Ms. Larson's administrative assistant). At the time Ms. Sanders assumed most of plaintiff's responsibilities, Ms. Sanders was given the title of Marketing Coordinator. Within a few months, defendant hired Candace

---

**7.** Moreover, in *Campbell*, unlike the situation here, it was uncontroverted that the defendant did not hire anyone to replace the plaintiff. 260 F.Supp.2d at 1104. The court suggested that, in such circumstances, it was unclear whether plaintiff could nonetheless establish a prima facie case by showing, despite the fact that plaintiff was not terminated through a reduction in force, that similarly situated younger employees were treated more favorably in that they were retained (a modification of the prima facie case typically

reserved for the reduction-in-force context, where the plaintiff is often not replaced).

**8.** Here, the parties have agreed in their briefs that a plaintiff in an ADEA discharge case can establish the fourth prong of the prima facie case by showing that similarly situated younger employees were treated more favorably. The court, then, assumes without deciding that such evidence would satisfy the fourth prong in this context.

Watson as the Administrative Assistant for the Sales and Marketing Department "primarily to do database clean up." Eventually, Ms. Sanders quit her employment with defendant and Ms. Watson assumed the role of Marketing Coordinator. A fair reading of Ms. Sanders' affidavit suggests that she was no longer performing all of her "administrative assistant" responsibilities in addition to plaintiff's responsibilities, particularly since Ms. Sanders was given a new title upon plaintiff's discharge and defendant hired a new administrative assistant just three months after Ms. Sanders assumed the Marketing Coordinator role. In such circumstances, a jury must determine whether plaintiff was replaced or whether her job, as defendant contends, was in fact eliminated. *Compare Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 373 (6th Cir.1999) (plaintiff could not establish that he was replaced where the two existing employees who assumed his duties maintained their prior job titles and responsibilities) *with Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1397 (7th Cir.1997) (where the plaintiff is fired and the employer must hire a new employee to do the work of existing employees that the existing employees must give up to do plaintiff's work, the plaintiff has been replaced even though plaintiff's duties have been spread out to existing employees) (dictum).[9]

*B. The Pretext Analysis*

 As plaintiff has set forth sufficient evidence to permit a jury to conclude that she was replaced, the burden shifts to defendant to articulate a legitimate, non-

discriminatory reason for its decision. *See English v. Colorado Dep't of Corrections*, 248 F.3d 1002, 1008 (10th Cir.2001). As discussed above in connection with plaintiff's ADA claim, defendant has satisfied this burden and, thus, the burden reverts to plaintiff to show that defendant's proffered reasons are pretextual. *See id.* While the court has concluded above that plaintiff has made an adequate showing of pretext with respect to her disability claim, that conclusion does not necessarily carry over to plaintiff's claims of gender and age discrimination. As explained above, the circumstances surrounding the termination of plaintiff's employment are suspicious in large part because of the timing of that decision-viewing the evidence in the light most favorable to plaintiff, the decision occurred just two weeks after plaintiff advised Ms. Larson of her diagnosis. The timing of the decision, however, has no obvious relationship to plaintiff's gender or age and plaintiff has shown no such relationship. Thus, plaintiff must come forward with some evidence of pretext to show that defendant's decision to terminate her employment was based, even in part, on plaintiff's gender or age. The court examines that evidence below.

1. Gender Discrimination

In an effort to show that defendant's proffered reasons for terminating her employment are a pretext for gender discrimination, plaintiff first compares the manner in which defendant treated her to the manner in which defendant treated allegedly similarly situated males in the workplace.

---

9. Defendant suggests that the difference between Ms. Sanders' and plaintiff's compensation is sufficient proof, standing alone, that Ms. Sanders did not replace plaintiff. Specifically, defendant highlights that Ms. Sanders was earning roughly $33,000 per year at the time she quit her employment as Marketing Coordinator and plaintiff was earning roughly $47,000 at the time of her discharge. Defendant, however, directs the court to no authority suggesting that a plaintiff, as a matter of law, cannot establish that he or she was replaced if the person who allegedly replaced the plaintiff earns considerably less money than the plaintiff.

This is clearly an acceptable manner of showing pretext. *See Gossett v. Okla. ex rel. Bd. of Regents for Langston Univ.,* 245 F.3d 1172, 1177 (10th Cir.2001) ("Evidence sufficient to raise a fact issue on whether a defendant's proffered explanation is pretextual may take a variety of forms, including evidence that the defendant treated the plaintiff differently from others who were similarly situated, which we have held is especially relevant to a showing of pretext.").

▇ According to plaintiff, defendant treated males more favorably than it treated her in two respects. First, plaintiff contends that defendant permitted Kurt Siemers to take a leave of absence when he had significant emotional problems that were potentially debilitating and did not terminate his employment; however, when faced with plaintiff's potentially debilitating diagnosis, defendant immediately terminated her employment. Plaintiff, however, has not shown that Mr. Siemers was similarly situated to her and, in fact, the evidence reflects that he is not similarly situated to plaintiff. Mr. Siemers was a shareholding member of the firm and the individual whom defendant intended to position as its next CEO (indeed, Mr. Siemers assumed the position of CEO in early 2003). Moreover, Mr. Siemers did not report to Ms. Larson as plaintiff did. For these reasons, then, plaintiff's comparison to Mr. Siemers is not a legally relevant one and is insufficient to demonstrate pretext. *See, e.g., Jones v. Denver Post Corp.,* 203 F.3d 748, 752–53 (10th Cir.2000) (nonsupervisory and supervisory employees cannot be deemed similarly situated).

▇ The only other comparative evidence that plaintiff offers is that Sam Sterling, one of defendant's male employees, was a salesperson and yet he was not required to report to Ms. Larson in Wichita and was thus "insulated" from Ms. Larson despite the fact that all other sales and marketing employees, including plaintiff, were required to report to Ms. Larson in Wichita. But the very fact that Mr. Sterling did not report to Ms. Larson indicates that he was not similarly situated to plaintiff. Moreover, Mr. Sterling worked out of defendant's Alva, Oklahoma office and, significantly, worked in an entirely separate region than Ms. Larson and her staff.[10] Finally, Mr. Sterling was a salesperson and plaintiff was not. For all of these reasons, plaintiff's attempt to compare herself to Mr. Sterling is unavailing. *See Block v. Kwal–Howells, Inc.,* 2004 WL 296976, at *3 (10th Cir. Feb.17, 2004) (two employees not similarly situated where they worked for different departments, reported to different supervisors and their positions entailed different types of work).

▇ Next, plaintiff maintains that her claim that she was terminated based on her gender is supported by evidence that defendant treats women as "second-class citizens." In support of her theory that women were treated as such, plaintiff highlights that out of the firm's twenty partners, only two of those partners were women. While statistical data may create an inference of discrimination, such data may be "so flawed as to render it insufficient to raise a jury question." *See Doan v. Seagate Technology, Inc.,* 82 F.3d 974, 979 (10th Cir.1996). Moreover, statistics taken in isolation are generally not probative of discrimination. *Id.* Here, plaintiff's statistical evidence is flawed for several reasons.

---

10. The evidence reflects that defendant's territory was divided into seven different regions and each region had a "member in charge" or regional leader. Thus, Mr. Sterling reported to Mel Kitts, the member in charge of the particular region in which Mr. Sterling worked.

■ First, plaintiff's data shows only the gender of those individuals who were partners during the relevant time period. It fails, however, to show how many individuals, of what gender, were not made partner by defendant during that period. *See Kuhn v. Ball State University*, 78 F.3d 330, 332 (7th Cir.1996) (in failure-to-promote case, list of persons promoted by University was "next to worthless" without information concerning how many people, of what age, were not promoted). Without knowing whether any other female individuals were eligible for partnership and sought partnership during the relevant period (and, if so, how many), the court is unable to draw an inference of discrimination from plaintiff's evidence.

Second, plaintiff's data fails to eliminate nondiscriminatory explanations for the numerical disparity by showing disparate treatment between similarly situated individuals. *See Doan*, 82 F.3d at 979 ("Statistical evidence which fails to properly take into account nondiscriminatory explanations does not permit an inference of pretext."). Plaintiff's statistical evidence, for example, fails to compare the qualifications and experience of those male individuals who were made partners with the qualifications and experience of those female individuals who were not made partners. In other words, in order for plaintiff's data to have probative significance, it would have to demonstrate that the female individuals who were not made partner had qualifications and experience comparable to the male individuals who were made partner and that the individuals were similarly situated in any other relevant aspects. *See Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 532–33 (10th Cir.1994); *Fallis v. Kerr–McGee Corp.*, 944 F.2d 743, 746–47 (10th Cir.1991).

Finally, plaintiff's small sample size significantly lessens the value of plaintiff's statistical data. As the Tenth Circuit has cautioned, "the smaller the sample size, the greater the likelihood that the under-representation reflects chance rather than discriminatory practices." *Baker v. Ogden Servs. Corp.*, 74 F.3d 1248, 1996 WL 15490, at *4 (10th Cir.Jan.16, 1996) (citations omitted); *see Lucas v. Dover Corp.*, 857 F.2d 1397, 1403 (10th Cir.1988) (sample size of 18 "must be evaluated with caution"). In light of its significant flaws, plaintiff's statistical sample simply does not permit an inference of gender discrimination.[11]

■ Plaintiff also submits the affidavits of several former employees who aver that defendant operated a "good old boy" network and that women were treated poorly or otherwise unable to advance because of this network. For example, plaintiff offers the affidavit of Amanda Gardiner, a former employee, who avers that "men bonded and developed relationships with each other outside of the office in activities that, by their very nature, excluded women" and that "decisions were made on a fishing boat or a hunting trip." She further avers that talk around the office "revolved around hunting, fishing and sports; talk of family and children was scarce." According to Ms. Gardiner, if a woman wanted to "get ahead" at defendant, she had to "conform" by learning about football, hunting and the other interests of the male partners. Another former employee, Shari Edwards, also avers that

11. In an argument similar to her argument concerning the number of women partners, plaintiff asserts that several female employees in plaintiff's region were terminated during a time frame when only one male employee from the region was terminated. For the same reasons that the court rejects plaintiff's evidence concerning the number of women partners, the court concludes that plaintiff's evidence concerning the termination of these largely unidentified female employees is simply not indicative of gender discrimination.

defendant operated a "good old boy" network and that female accountants were given only "grunt work" that male accountants did not want to do and that only the most menial accounting projects were assigned to the female accountants.

Even assuming the truth of plaintiff's evidence, the evidence is simply not relevant to the issue of whether Mr. Jenkins and Ms. Larson terminated plaintiff based on her gender. None of the individuals who have submitted affidavits on plaintiff's behalf have alleged any gender bias on the part of Ms. Larson or Mr. Jenkins. In fact, plaintiff herself contends that Ms. Larson wanted only women to work on her staff. As the First Circuit has recognized, "[t]he biases of one who neither makes nor influences the challenged personnel decision are not probative in an employment discrimination case." *See Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 63 n. 17 (1st Cir.1999) (refusing to take into account evidence of a general discriminatory atmosphere where none of the incidents involved the individuals who made the challenged personnel decision).

Indeed, the Seventh Circuit has rejected such evidence in a similar situation. *See Chambers v. American Trans Air, Inc.*, 17 F.3d 998 (7th Cir.1994). In *Chambers*, the plaintiff, a female, alleged that she was denied various pay increases based on her gender. *See id.* at 1003. In support of her claim, the plaintiff submitted various affidavits showing general gender discrimination at the defendant, including the affidavit of a former vice president who testified that sexism was pervasive in the corporation. *See id.* at 1004. The Seventh Circuit rejected this evidence as having no probative value because there was "no link from this information to employment decisions involving [the plaintiff]." *See id.* As Judge Cudahy explained:

Liability under Title VII does not turn on the bigotry of company managers unless that bigotry resulted in injury to the plaintiff. A showing of other instances of discrimination in the company may have evidentiary value, but it is not a substitute for a showing of injury to the plaintiff. There therefore needs to be a link between an ATA's manager's alleged prejudice, and the decisions that [the plaintiff] is challenging.

*See id.; accord Thomas*, 183 F.3d at 63 n. 17 (Although "circumstantial evidence of a general discriminatory environment may add 'color' to an employer's decisionmaking process, we have explained that '[p]roof of a general atmosphere of discrimination is not the equivalent of proof of discrimination against an individual.'"). Ultimately, the Seventh Circuit in *Chambers* upheld the grant of summary judgment to the defendant on the plaintiff's gender discrimination claim. *See* 17 F.3d at 1004.

The only other evidence that plaintiff offers in support of her gender discrimination claim is again in the form of affidavits submitted by former employees suggesting that women were treated by Ms. Larson as "sex objects." These employees aver that during the Christmas season, Ms. Larson's staff dressed in short red skirts as "Santa's Helpers" and delivered gifts to clients of the firm. Shari Edwards, one of the individuals who was asked to dress in a short red skirt, avers that she was "uncomfortable" and "self-conscious" in the outfit. On another occasion, Ms. Larson had her female staff act as "beer cart girls" during the firm's golf tournament. According to one former employee, at least one of the female staff members was dressed "very skimpily." One of the individuals who worked as a "beer cart girl" avers that she found the experience "terribly degrading." In addi-

tion, a male former employee avers that on several occasions when he would visit the Wichita office and, more specifically, the sales and marketing department, Ms. Larson would joke that he was only there to "check out the view" and it was obvious to him that Ms. Larson was referring to her young, attractive all-female sales staff. Finally, Jaylene Hill, a female former employee who used to work as a member of Ms. Larson's staff, avers that Ms. Larson's "sales philosophy for the Sales and Marketing Department ... was 'sex sells.'" According to Ms. Hill, Ms. Larson expressly told her that "sex sells" and Ms. Larson implemented her philosophy by hiring only young, pretty women to work in the department and by devising various "promotional stunts to show off" her staff (*i.e.,* the "Santa's Helpers" and "beer cart girls" events).

Even assuming the truth of plaintiff's evidence concerning Ms. Larson's "sex sells" philosophy and the implementation of that philosophy, this evidence simply does not tend to show that Ms. Larson terminated plaintiff because of her gender. If anything, Ms. Larson was seeking an all-female staff and the termination of plaintiff certainly does not help accomplish that goal. Similarly, plaintiff has not shown how the fact that Ms. Larson treated her staff as "sex objects" has any connection to Ms. Larson's decision to fire her. In that regard, plaintiff has no evidence that Ms. Larson terminated her employment because she failed to conform to a sex stereotype to which the other females in the department conformed. For example, the record is devoid of any evidence that Ms. Larson chastised plaintiff or otherwise expressed her disapproval when plaintiff refused to dress in a short red skirt for the "Santa's Helpers" outing and, instead, decided to dress up like Ms. Claus. At the very most, plaintiff suggests that she was terminated because she was not young and attractive (and, thus,

did not meet Ms. Larson's definition of a "sex object"). This assertion, however, sounds in age discrimination and will be addressed below.

Having failed to come forward with evidence that defendant's proffered reasons for terminating her employment were a pretext for gender discrimination, plaintiff cannot withstand defendant's motion for summary judgment on this claim.

**2. Age Discrimination**

█ The court turns, then, to plaintiff's evidence of pretext with respect to her claim of age discrimination. In that regard, plaintiff again points to the affidavits of various former employees to show that Ms. Larson's sales philosophy was that "sex sells" and that she was endeavoring to convert her sales staff into a group of young, attractive females. According to plaintiff, she was terminated because she was 55 years old and did not fit the "young, attractive" mold that Ms. Larson was seeking. Plaintiff also highlights that, upon her termination, her duties were transferred to Keri Sanders, who was 28 years old at the time and that Ms. Sanders was ultimately replaced by Candace Watson, who was approximately 30 years old at the time. Moreover, the two other females who made up the sales and marketing department (other than Ms. Larson and plaintiff) were in their mid–20s or early 30s.

At the outset, the court notes that evidence of the ages of the employees in Ms. Larson's department, standing alone, is not determinative. While the evidence demonstrates that Ms. Larson had a propensity to hire young females, there is no evidence in the record that in doing so Ms. Larson was passing over qualified older female applicants. For all the summary judgment record shows, no one else even applied for the positions filled by these

young women. That having been said, however, Jaylene Hill, a former employee of defendant who worked as a member of Ms. Larson's staff, has submitted an affidavit in which she states that Ms. Larson expressly told her on more than one occasion that "sex sells." [12] When this comment is viewed in conjunction with the facts (viewed in the light most favorable to plaintiff) that Ms. Larson's sales staff consisted of young, attractive women and Ms. Larson decided to have her staff dress in short skirts as "Santa's Helpers" and to act as "beer cart girls" during a company golf tournament, a reasonable jury could conclude that Ms. Larson, in expressing her opinion that "sex sells" was, in essence, expressing a preference for young, attractive employees.

While defendant contends that any such philosophy would have no bearing on plaintiff in any event because plaintiff was not a member of the "sales" staff, plaintiff was certainly treated as a member of the sales staff (and her job duties were arguably headed in that direction) as evidenced by plaintiff's participation in the "Santa's Helpers" event. Thus, while the court finds that plaintiff's age discrimination claim presents a very close question on summary judgment, the court nonetheless believes that a reasonable jury could find that Ms. Larson desired to terminate plaintiff's employment so that she could replace plaintiff with a younger, more attractive female. *See, e.g., Rivera–Rodriguez v. Frito Lay Snacks Caribbean, a Division of Pepsico Puerto Rico, Inc.,* 265 F.3d 15, 27 (1st Cir.2001) (plaintiff presented sufficient evidence to overcome summary judgment on his claim that he was terminated based on his age where decisionmakers, in discussions with a recruiting firm, indicated a preference for younger employees and a lack of preference for candidates in their forties); *Morse v. Southern Union Co.,* 174 F.3d 917, 922–23 (8th Cir.1999) (upholding jury verdict for plaintiff; jury reasonably could have concluded that high-level executive's stated preference for younger employees motivated the decision to terminate the plaintiff). Summary judgment, then, is denied on plaintiff's claim of age discrimination.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc. # 26) is granted in part and denied in part.

**IT IS SO ORDERED.**

---

12. Defendant objects to Ms. Hill's affidavit as inadmissible hearsay though defendant does not explain or expound upon its objection in any way. In any event, the objection is overruled because, on the record before it, the court concludes that Ms. Larson's alleged statement to Ms. Hill that "sex sells" is not hearsay because it is a vicarious admission under Federal Rule of Evidence 801(d)(2)(D). Under that rule, a statement is not hearsay if it is offered against a party and is "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." *See* Fed.R.Evid. 801(d)(2)(D) (emphasis added).