FILED
United States Court of Appeals
Tenth Circuit

January 28, 2016

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

HAROLD M. NYANJOM,

　　　Plaintiff - Appellant,

v.

HAWKER BEECHCRAFT CORP.,

　　　Defendant - Appellee.

No. 15-3148
(D.C. No. 6:12-CV-01461-JAR)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **O'BRIEN**, and **PHILLIPS**, Circuit Judges.
_____

　　Harold Nyanjom sued his former employer, Hawker Beechcraft Corporation (HBC), for violations of the Americans with Disabilities Act (ADA) and the Kansas Act Against Discrimination (KAAD)—alleging that HBC discriminated against him because he is visually impaired and retaliated against him for complaining about the discrimination.  On cross-motions for summary judgment, the district court found in favor of HBC.  Exercising our jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. Background

Harold Nyanjom has been virtually blind in his left eye since birth. He worked as an at-will employee for HBC from January 22, 1999, to June 1, 2011. HBC manufactures aircraft for general aviation and military purposes.

When he started in 1999, Mr. Nyanjom worked as a sheet-metal assembler for various types of aircraft and was responsible for writing tags identifying non-conforming parts. He did not request special accommodations for his visual impairment, nor did HBC impose any work-related restrictions. Over the next decade, he occasionally switched jobs within the company, working as a rivet-machine operator, an assembly inspector, and a conformity inspector, still with no accommodations or restrictions. When the aviation industry hit hard times during economic downturns, he was "bumped" to previous positions under the terms of a collective-bargaining agreement that mandated the retention and reassignment of more senior employees during a reduction in force or layoff. And so in 2010, Mr. Nyanjom found himself back working as a sheet-metal assembler.

Upon reassignment, Mr. Nyanjom began a letter-writing campaign to his optometrist, asking her to attest to HBC that he could not safely perform a list of tasks required for sheet-metal assembly—a request she denied.[1] And, for the first time, Mr. Nyanjom requested accommodations to protect his eyes (beyond the protective eyewear already provided), including better overhead lighting,

---

[1] The optometrist explained in her notes: "I can't write a letter stating he can't do something that he is capable of. He has worked in sheet metal in the past & has a good performance record." R., Vol. II at 536.

freestanding lamps, magnification devices, large-print assembly instructions and blueprints, and an assistant. HBC was unwilling to revamp the plant's overhead lighting, but it provided the lamps, began converting the documents to large print, stationed an experienced sheet-metal assembler at Mr. Nyanjom's side, and offered to have a company ergonomist evaluate Mr. Nyanjom's workspace.

Still, these accommodations did not satisfy Mr. Nyanjom so he began a quest for benefits. He twice applied for—and was denied—disability benefits through the Social Security Administration (SSA).[2] He was more successful with his application for short-term disability benefits through HBC: the company approved those benefits and placed him on a one-year medical leave of absence per its company policy (beginning in September 2010). Mr. Nyanjom then applied for and received Supplemental Security Income disability benefits through the SSA (effective March 2011) and disability retirement benefits from HBC (based on a termination date of June 1, 2011). Mr. Nyanjom repeatedly affirmed in these applications that he was permanently disabled and unable to work.

Mr. Nyanjom also filed complaints with the Kansas Human Rights Commission (KHRC) and the Equal Employment Opportunity Commission (EEOC), in which he represented (contrary to statements within his benefit applications) that he was able to work with reasonable accommodations. He alleged that HBC discriminated against him, denied him those reasonable accommodations,

---

[2] The SSA denied his first application because he was still working every day. It denied his second application because Mr. Nyanjom and his wife had too many assets to qualify for benefits.

involuntarily transferred him, put him on an involuntary medical leave of absence, denied him long-term disability benefits, refused to transfer him to a technical-specialist position, refused to rehire him, and retaliated against him. The KHRC found "[p]robable [c]ause to credit" his allegations, R., Vol. I at 36, and the EEOC found "reasonable cause to believe that a violation of the law has occurred," *id.* at 26.[3]

Having secured a right-to-sue letter, Mr. Nyanjom filed this lawsuit in the United States District Court for the Southern District of New York, where HBC's Chapter 11 bankruptcy was pending. That court transferred the case to the District of Kansas, where it was stayed until HBC filed a bankruptcy-court-approved stipulation permitting Mr. Nyanjom to proceed with litigation to liquidate the value of his claim. (Without such a stipulation, the claim would have been discharged as part of the confirmed bankruptcy plan.) Discovery proceeded, and both parties moved for summary judgment. The district court resolved the case in HBC's favor in a comprehensive, 44-page memorandum and order. Mr. Nyanjom timely appealed, proceeding pro se.

---

[3] Mr. Nyanjom also filed a separate administrative complaint that alleged retaliation based on his involuntary retirement and the failure to pay disability retirement benefits before May 2011. But the KHRC found that "the available evidence did not support" those allegations, R., Vol. I at 48, and the EEOC adopted that finding, *id.* at 29.

4

## II.    Discussion

We review the district court's grant of summary judgment de novo, applying the same legal standard as the district court. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013). Summary judgment must be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998). But if the movant will not bear the burden of persuasion at trial, it can meet this initial burden "simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. It "need not negate the nonmovant's claim." *Id.*

"[A]lthough our review is de novo, we conduct that review from the perspective of the district court at the time it made its ruling, ordinarily limiting our review to the materials adequately brought to the attention of the district court by the parties." *Id.* Like the district court, we "have a limited and neutral role in the adversarial process, and are wary of becoming advocates who comb the record of previously available evidence and make a party's case for it." *Id.* at 672.

### A.    Discrimination

Mr. Nyanjom first argues that the district court erred in dismissing his discrimination claims under the ADA, 42 U.S.C. §§ 12101-12213, and the KAAD, Kan. Stat. Ann. §§ 44-1001 to 1013. The ADA prohibits "discriminat[ion] against a

5

qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The KAAD also makes it unlawful for an employer to discriminate against an employee because of a disability. Kan. Stat. Ann. § 44-1009(a)(1).

We consider Mr. Nyanjom's discrimination claims under the ADA and the KAAD in tandem because the same standards and burdens govern both claims. *Kinchion v. Cessna Aircraft Co.*, 504 F. Supp. 2d 1137, 1142 (D. Kan. 2007); *Holopirek v. Kennedy & Coe, LLC*, 303 F. Supp. 2d 1223, 1229 n.1 (D. Kan. 2004); *see also Aramburu v. Boeing Co.*, 112 F.3d 1398, 1403 & n.3 (10th Cir. 1997) (stating that the same standards and burdens apply to claims under the Civil Rights Act of 1991, 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2 to -3; and the KAAD). Furthermore, neither side has argued that the applicable provisions differ in any significant respect.

To establish a prima facie case of discrimination, a plaintiff must show "(1) he is disabled (or perceived as disabled) as defined by the ADA, (2) he is qualified to perform the essential functions of his job with or without reasonable accommodation, and (3) he suffered discrimination as a result of his disability." *Koessel v. Sublette Cty. Sheriff's Dep't*, 717 F.3d 736, 742 (10th Cir. 2013). The district court concluded that Mr. Nyanjom was unable to show, with record evidence, that he was qualified to perform the essential functions of his job with or without reasonable accommodation—pointing out that Mr. Nyanjom repeatedly averred in applying for

various disability benefits that he "would be unable to work for the remainder of his life" because he is permanently and totally disabled, R., Vol. II at 274.

We agree that Mr. Nyanjom failed to establish a prima facie case of discrimination under the ADA or the KAAD. The district court conducted a thorough and well-reasoned analysis of those claims, and we see no need to repeat it here. We affirm the dismissal of the discrimination claims for substantially the same reasons provided in the district court's memorandum and order dated May 26, 2015.

## B.    Retaliation

Mr. Nyanjom next argues that the district court erred in dismissing his retaliation claims under the ADA, 42 U.S.C. § 12203(a), and the KAAD, Kan. Stat. Ann. § 44-1009(a)(4). Again, we consider the ADA and KAAD claims together. The elements of a retaliation claim are: (1) the employee "engaged in protected opposition to discrimination"; (2) the employee suffered an adverse action during or after his opposition, which a reasonable employee would have found to be materially adverse (meaning that "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination"); and (3) there was "a causal connection . . . between the protected activity and the materially adverse action." *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1208 & n.4 (10th Cir. 2007) (internal quotation marks omitted).

The district court found that Mr. Nyanjom was unable to establish the elements of his retaliation claim. Yes, he engaged in protected activity by filing complaints with the KHRC and the EEOC and by seeking reasonable accommodations. But the

7

only materially adverse action that HBC took was placing Mr. Nyanjom on involuntary medical leave after he requested accommodations for his visual impairment. And HBC offered a legitimate, non-retaliatory reason for this action—namely, that the company's policy on incapacity rendered him ineligible to work. Because Mr. Nyanjom could not point to any record evidence that this reason was a pretext, his retaliation claim failed as a matter of law.

Mr. Nyanjom's opening brief does not contain a single argument about the dismissal of his retaliation claim. Although he does contest the district court's ruling in his reply brief, we decline to consider those arguments because it is well-settled that "[t]his court does not ordinarily review issues raised for the first time in a reply brief." *Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000); *see also Starkey ex rel. A.B. v. Boulder Cty. Soc. Servs.*, 569 F.3d 1244, 1259 (10th Cir. 2009) (explaining that this court will not consider additional evidence cited in a reply brief). We follow this policy for "obvious" reasons: the delay "robs the appellee of the opportunity to demonstrate that the record does not support an appellant's factual assertions and to present an analysis of the pertinent legal precedent that may compel a contrary result," and the policy "protects this court from publishing an erroneous opinion because we did not have the benefit of the appellee's response." *Stump*, 211 F.3d at 533. Mr. Nyanjom's pro se status does not allow him to disregard the Federal Rules of Appellate Procedure. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005) (Fed. R. App. P. 28 "applies equally to pro se litigants." (internal quotation marks omitted)).

8

Even if Mr. Nyanjom had presented his retaliation arguments at the appropriate stage of these proceedings, the outcome would be the same. We agree with the district court that Mr. Nyanjom failed to establish a prima facie case of retaliation under the ADA or the KAAD.

## C.    Other Arguments

Mr. Nyanjom also faults the district court for deeming his cross-motion for summary judgment untimely and for finding that he did not follow procedural rules in filing his sur-reply to HBC's summary judgment motion. We need not address these arguments because the district court took Mr. Nyanjom's pro se status into account and considered his cross-motion and sur-reply on the merits, going to great efforts to decipher the arguments within his lengthy pleadings despite the myriad technical deficiencies that plagued them.

Finally, Mr. Nyanjom argues that the district court should have determined his claims are exempt from bankruptcy discharge because the EEOC and the KHRC found that HBC engaged in willful and malicious discrimination and retaliation. This argument is meritless. Mr. Nyanjom does not refute the district court's position that it lacked jurisdiction to make such a determination, *see* R., Vol. II at 241 n.1. In any event, Mr. Nyanjom's claims were not discharged with other claims and debts that arose before February 2013: the bankruptcy court approved a stipulation to allow him to proceed with this litigation to liquidate his claim. Furthermore, to the extent Mr. Nyanjom argues the EEOC's and KHRC's decisions required entry of summary

9

judgment in his favor, the district court correctly articulated the limited evidentiary value of administrative decisions.  *Id.* at 263-64.

### III.    Conclusion

Mr. Nyanjom has not demonstrated that the district court erred in dismissing his disability or retaliation claims.  We affirm the judgment of the district court.

Entered for the Court


Gregory A. Phillips
Circuit Judge