**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 2, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DARRELL R. HARE,

      Plaintiff-Appellant,

      v.

DENVER MERCHANDISE MART,
INC., DENVER MERCHANDISE
MART EMPLOYERS, INC., and
AMERICAN REALTY INVESTORS,

      Defendants-Appellees.

No. 06-1270

District of Colorado

(D.C. No. 04-CV-02416-PSF-MEH)

---

### ORDER AND JUDGMENT[*]

---

Before **MURPHY**, **BRORBY**, and **McCONNELL**, Circuit Judges.

---

Plaintiff-Appellant Darrell Hare was employed as the general manager of

the Denver Merchandise Mart, Inc. ("the Mart") for nearly thirty years. Beginning

in 2001, his relationship with higher management began to break down. He was

terminated from his position as general manager on December 29, 2003, at the age

of 64. He brought this suit under the Age Discrimination in Employment Act

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

("ADEA") and Colorado common law, alleging that his termination was the result of illegal age discrimination and that he was discharged in violation of public policy. Although the defendants provided substantial evidence that Mr. Hare was legitimately terminated for business reasons, that is not the question for this Court on summary judgment. Employing the analytical structure of *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973), as we must, we conclude that Mr. Hare has pointed to sufficient inconsistencies in the employer's explanation for his termination, that the case must go to a jury. We therefore reverse the district court's grant of summary judgment on the ADEA claim, while affirming summary judgment of the wrongful discharge claim.

## I. Background

The Denver Merchandise Mart is a trade show venue that provides temporary space for events as well as permanent showrooms for the display of wholesale merchandise. It is a subsidiary of American Realty Investors ("ARI"), headquartered in Dallas, Texas. Mr. Hare was the general manager of the Mart until his termination on December 29, 2003. As general manager, Mr. Hare oversaw daily operations at the Mart and paid employee wages and bonuses.

In 2001, ARI's Asset Manager, John Cook, investigated the executive bonus plan in place at the Mart and concluded that it produced excessive compensation for some company officials, including Mr. Hare. Mr. Cook found that although Mr. Hare's base salary ranged between $155,000 to $210,000 per

year, Mr. Hare's total annual compensation including bonuses and other payments was well over $300,000. He reported these findings to Gene Phillips, advisor to the trust that is the controlling shareholder of ARI. ARI decided to implement a revised bonus plan for 2002. In December 2001, Mr. Cook informed Roger Klein, the Mart's Controller, of the change and told him that bonus payments should not be released without prior authorization. In spite of this directive, Mr. Hare issued, though he did not release, bonus checks in April 2002 for amounts that would have been due under the prior plan. Mr. Hare informed Mr. Cook by letter, with a legal memorandum attached to support his position, that he believed the bonus payments were earned and vested and therefore required to be paid under Colorado law. After considering the legal memorandum, Mr. Cook directed first quarter bonuses to be paid to all employees except Mr. Hare and Mr. Klein. Mr. Hare nonetheless released bonus checks to himself and Mr. Klein contrary to Mr. Cook's directive. Mr. Cook did not immediately respond, but rather made clear in a letter dated December 2, 2002 that executive bonuses would be eliminated as of January 2003 and a new bonus program put in place.

On December 3, 2003, Mr. Hare and Mr. Klein attended a meeting in Dallas with Mr. Phillips, Mr. Cook, and Karl Blaha to discuss the Mart's operations, the budget, and the new bonus program for 2003. At the meeting, Mr. Phillips informed Mr. Hare that there would be changes to the management agreement between ARI and the Mart, and Mr. Cook presented the proposed bonus plan for

-3-

2003. Mr. Hare was visibly upset by the discussion. Mr. Phillips, himself 69 years old, then asked Mr. Hare, "How old are you[?] 65, 66 years old[?]" App. 163. Mr. Hare replied, "No." *Id.* Mr. Phillips asked, "Well, how old are you?" to which Mr. Hare responded that he was 63, and Mr. Phillips asked "How long do you expect to continue to work?" *Id.* Mr. Hare replied that he didn't know, and that he hadn't thought about retiring because his daughter was in college and he enjoyed working. Mr. Phillips then commented that he would like Mr. Hare to assist in finding a successor to fill his position as general manager, "someone younger to teach." *Id.* Shortly thereafter Mr. Hare and Mr. Klein abruptly walked out on the meeting.

A few days later Oscar Cashwell, a top-level liaison to Mr. Phillips, called Mr. Hare and expressed his concern that Mr. Hare had left the December 3 meeting angrily. Mr. Hare's notes of the phone call record that Mr. Cashwell started the conversation by noting, "[y]ou are starting to get old like I am," and suggested that Mr. Hare enter a consulting agreement with the Mart while Mr. Hare picked a replacement and trained him. *Id.* These comments by Mr. Phillips and the follow-up phone call by Mr. Cashwell were the only age-related remarks made by ARI's management to Mr. Hare.

In January 2003, Mr. Klein resigned from his position as Controller of the Mart and Mr. Hare resigned his corporate positions as President, Officer and Director of Denver Merchandise Mart, Inc., Denver Merchandise Mart Employers,

Inc., and Valley Corporation.[1] Mr. Cook and Mr. Phillips testified that they believed that Mr. Hare would soon also resign his position as general manager. App. 267, 324. As a result, Mr. Phillips directed the head of ARI's human resources department to search for a replacement. Believing that the Mart might soon be left without a general manager, Mr. Cook began to take a more active role in management of the Mart.

In July 2003, Lisa Fogg joined the Mart's management team to replace Mr. Klein. As the Mart's new Controller, Ms. Fogg investigated the Mart's accounting and reported to Mr. Cook that Mr. Hare had taken payroll advances and made vacation payouts to himself that may have violated the Mart's employee policies. She also reported that many of the Mart's employees were intimidated by Mr. Hare and that Mr. Hare arrived for work late and left early. Mr. Cook testified that although he had until mid-2003 considered Mr. Hare to be a very good manager, he learned from Ms. Fogg and his own investigation that in fact Mr. Hare "did not exhibit positive management skills, and he did not take an active role in managing the Mart . . . the actual manager of the Mart operation for years had been Roger Klein. . . ." App. 159.

During the fall of 2003, Mr. Cook, Mr. Blaha, and Mr. Phillips decided to terminate Mr. Hare, and on December 28, 2003, Mr. Blaha and ARI's head of

---

[1]Denver Merchandise Mart Employers, Inc. is a separate entity that manages the Mart's payroll. The Valley Corporation holds the Mart's liquor license.

human resources traveled to Denver to inform Mr. Hare of his termination. No one directly replaced Mr. Hare, and the position of general manager was formally eliminated. Mr. Cook assumed the responsibilities of general manager of the Mart, which he performed during two days each week in Denver.

The reasons for the decision to terminate Mr. Hare are disputed, as is the degree of involvement by Mr. Phillips in the termination decision. Mr. Hare claims that he was terminated because of his age and in retaliation for his decision to make bonus payments to himself and the Mart's employees in April 2002. Mr. Hare also claims that Mr. Phillips was the de facto final decision maker at ARI and was an active participant in the decision to terminate him. The Defendants respond that Mr. Hare's termination was based on his poor performance as general manager of the Mart and (or possibly or) because Mr. Cook determined that the position could be eliminated. The Defendants also claim that Mr. Phillips held merely an advisory role in the decision to terminate Mr. Hare.

Mr. Hare filed suit in the District Court of Colorado under the ADEA, 29 U.S.C. § 621, *et seq.*, and for violation of Colorado common law prohibiting an employer from discharging an employee in violation of public policy. The district court granted summary judgment in favor of the Defendants on both claims. *Hare v. Denver Merchandise Mart, Inc.*, No. 04-cv-02416-PSF-DES, 2006 WL 1517730, at *13 (D. Colo. May 31, 2006). The district court found that

Mr. Hare had failed to establish a prima facie case under the ADEA and that even if he had satisfied the burden of demonstrating a prima facie case, he failed to provide evidence that the defendants' reasons for firing him were pretextual. The district court granted summary judgment on Mr. Hare's common law wrongful discharge claim because he failed to provide evidence of a causal connection between his refusal to withhold bonuses and his termination twenty months later. We reverse the district court's grant of summary judgment on Mr. Hare's ADEA claim, and affirm summary judgment on his wrongful discharge claim.

## II. ADEA Claim

Under the ADEA, an employer cannot "discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). Thus, a plaintiff suing under the ADEA must prove that the challenged employment action was motivated, at least in part, by his age. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 141 (2000). The plaintiff may carry this burden either by presenting direct evidence of the employer's discriminatory intent or by presenting circumstantial evidence creating an inference of a discriminatory motive using the tripartite *McDonnell Douglas* burden-shifting analysis. *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973); *see Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1165 (10th Cir. 2000) (applying the *McDonnell Douglas* framework to an ADEA claim). Mr. Hare provides only circumstantial evidence of alleged age discrimination.

-7-

Under the *McDonnell Douglas* burden-shifting framework, the plaintiff must first establish a prima facie case by showing that (1) he belonged to a protected class; (2) he was qualified for the position; (3) he was discharged; and (4) the position was not eliminated after his discharge. *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1229 (10th Cir. 2000). If the plaintiff cannot show that his position was not eliminated, the plaintiff may provide other evidence that the termination occurred under circumstances that give rise to an inference of unlawful discrimination. *Plotke v. White*, 405 F.3d 1092, 1100 (10th Cir. 2005). In this Circuit "the fourth element of a *prima facie* case is a flexible one that can be satisfied differently in varying scenarios." *Id.* at 1100.

If the plaintiff successfully makes a prima facie showing, the employer must articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* at 1099. The burden then shifts back to the employee to demonstrate that the proffered reasons are pretextual. *Id.* To survive summary judgment, Mr. Hare need only show that there is a genuine issue of material fact as to whether he has satisfied each element of the *McDonnell Douglas* framework.

### *1. Prima Facie Case*

The defendants do not dispute that Mr. Hare has satisfied the first three elements of the prima facie test, but contend that Mr. Hare's position was eliminated by his discharge and therefore that Mr. Hare fails to satisfy the fourth element. Mr. Hare claims that his position was not eliminated, and makes two

independent arguments in support. First, he alleges that he was essentially replaced by Mr. Cook. However, there is no evidence in the record showing that Mr. Cook gave up his former duties to take over Mr. Hare's position as general manager. Second, Mr. Hare claims that although the title of general manager was eliminated, the duties of the general manager were simply reassigned to other employees. This argument fails as a legal matter. To reassign the responsibilities of a position to a number of other individuals is to eliminate the position. *Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 988 (10th Cir. 1995) ("[T]he test for position elimination is not whether the responsibilities were still performed, but rather whether the responsibilities still constituted a single, distinct position."). Therefore Mr. Hare does not provide sufficient evidence to create a genuine issue of material fact as to whether his position was eliminated after his discharge.

Mr. Hare can still satisfy the fourth element of the prima facie test and survive summary judgment if he can demonstrate that his termination occurred "under circumstances which give rise to an inference of unlawful discrimination." *Plotke*, 405 F.3d at 1100 (internal quotation marks omitted). The plaintiff is required, however, to proffer evidence that his discharge did not result from the most common legitimate reasons that an employer might terminate an employee, including elimination of his position. *Penske*, 220 F.3d at 1226–27. We have found that a plaintiff may establish a prima facie case even though his position was eliminated when there is a general reduction in force and the plaintiff shows

that he was treated less favorably than similarly situated employees, *Ingels v. Thiokol Corp.*, 42 F.3d 616, 621 (10th Cir. 1994), or if the defendant does not claim that the plaintiff's termination was based on elimination of his position. *Plotke*, 405 F.3d at 1100.  A plaintiff can also show circumstances which give rise to an inference of unlawful discrimination by proffering

> *actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus*, preferential treatment given to employees outside the protected class, in a corporate downsizing, the systematic transfer of a discharged employee's duties to other employees, or a pattern of recommending the plaintiff for positions for which she is not qualified [or over-qualified] and failure to surface plaintiff's name for positions for which she is well-qualified. A plaintiff might also rely upon the fact that the defendant, following plaintiff's termination, continued to seek applicants to fill the position, or, more generally, upon the timing or sequence of events leading to plaintiff's termination.

*Id*. (emphasis added)(internal quotation marks and alterations omitted)

Mr. Hare points to the age-related remarks made by Mr. Phillips and Mr. Cashwell to show circumstances that give rise to an inference of discrimination. For actions or remarks to support such an inference of discriminatory intent, the plaintiff must demonstrate a nexus between the actions or remarks and the decision to terminate. *Id*.  To show a nexus, the remarks must be made by someone involved in the decision to terminate the plaintiff.  Mr. Cook testified that Mr. Phillips ultimately made the decision to terminate Mr. Hare, showing a genuine issue of material fact as to whether Mr. Phillips was a primary decisionmaker in Mr. Hare's termination.

Another element necessary to establish a nexus is temporal connection between the remarks and the decision to terminate. The district court did not find Mr. Phillips' statements at the December 2002 meeting and Mr. Cashwell's follow up phone call to be sufficient evidence of discriminatory intent because they were made more than a year prior to Mr. Hare's termination. We agree that because of the temporal distance, without more, the remarks would not be sufficient to support an inference of discrimination.[2] However, ARI began searching for a replacement for Mr. Hare in January 2003, less than a month after the comments were made. App. 310. ARI had also suspended the bonus program that made up more than half of Mr. Hare's yearly compensation prior to the meeting, and did not establish a new bonus plan for 2003. The temporal nexus between the age-related remarks and these more immediate actions by ARI is relatively close and sufficient to support an inference of discriminatory motive that satisfies the burden of describing a prima facie case. *See Butler v. City of Prairie Vill., KA*, 172 F.3d 736, 749 (10th Cir. 1999) (finding that a decline in work evaluations leading up to discharge may contribute to an inference of discriminatory intent); *Marx v. Schnuck Mkts., Inc.*, 76 F.3d 324, 329 (10th Cir.

[2] The Defendants cite cases in their brief that address the temporal proximity necessary to support the causation prong of a prima facie case on a motion to dismiss when bringing a retaliation claim. Although informative, those cases are not entirely persuasive here because Mr. Hare need not show causation to establish a prima facie case under the ADEA. Mr. Hare need only show that the circumstances of his termination give rise to an inference of discrimination.

1996) ("[A] pattern of retaliatory conduct [that] begins soon after the filing of the FLSA complaint and only culminates later in actual discharge" is sufficient to support an inference of retaliatory motive); *Ostrowski v. Atlantic Mut. Ins. Cos.*, 968 F.2d 171 (7th Cir. 1992) (stating that allegedly discriminatory statements may be sufficient to present a prima facie case under *McDonnell Douglas*).

The burden on Mr. Hare to establish a prima facie case under the *McDonnell Douglas* framework is not onerous, *Plotke*, 405 F.3d at 1099, and the "nonmovant is only required to bring forth evidence *tending* to establish or show the material fact at issue." *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1116 (10th Cir. 2007). We acknowledge that a reasonable jury could interpret Mr. Phillips' retirement questions as a matter of succession planning rather than a reflection of age-related animus, as the district court did, but on summary judgment all reasonable inferences must be drawn in favor of the party opposing the motion. The burden of establishing a prima facie case is "one of production, not persuasion and involves no credibility assessment." *Plotke*, 405 F.3d at 1101. Whatever may be the most persuasive interpretation, Mr. Phillips' age-related statements are evidence that he, as the de facto head of the ARI management chain of command, was interested in replacing Mr. Hare with a younger employee and Mr. Hare's termination was motivated at least in part by age.

-12-

*2. Pretext*

In response to Mr. Hare's prima facie case, the defendants successfully articulate a nondiscriminatory reason for Mr. Hare's termination. In fact, the testimony of Mr. Phillips, Mr. Cook, Mr. Blaha, and Michael Lane provides numerous legitimate reasons why Mr. Hare was terminated, including that: Mr. Hare's responsibilities could be managed from Dallas at lower cost, he did not maximize the Mart's earning potential, he kept short working hours and was not actively involved in day-to-day operations at the Mart, he displayed an insubordinate attitude towards ARI's Dallas management, and he employed an intimidating and ineffective management style. Because the defendants have satisfied their burden under *McDonnell Douglas*, Mr. Hare "can avoid summary judgment only if he is able to show that a genuine dispute of material fact exists as to whether the defendant's articulated reason[s] [are] pretextual." *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1165 (10th Cir. 2000) (internal quotes omitted).

"Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence . . . ." *Hardy v. S.F. Phosphates Ltd. Co.*, 185 F.3d 1076, 1080 (10th Cir. 1999) (internal quotes and alterations omitted). The inquiry goes to the subjective belief of those making the termination decision; "[t]he

relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs." *Rivera v. City and County of Denver,* 365 F.3d 912, 924–25 (10th Cir. 2004) (internal quotation marks and alteration omitted).

Mr. Hare successfully shows pretext by pointing to an apparent contradiction in the testimony of those involved in the decision to terminate him. The following is an excerpt from Mr. Blaha's deposition regarding his understanding as to why Mr. Hare was terminated:

> Q: Why was [Mr. Hare] terminated?
> A: Because we decided to eliminate the position, that the position was not necessary, that we could run the property out of–out of Dallas.
> Q: That decision wasn't based on the fact that Mr. Hare was incompetent or anything, was it?
> A: No.
> Q: Had nothing to do with Mr. Hare's performance at all, did it?
> . . .
> A: No.

App. 277. Yet Mr. Phillips states directly in his testimony that Mr. Hare was terminated because of his performance. Mr. Cook states in his deposition that Mr. Hare was terminated because "[h]e wasn't doing anything. He was completely noneffective in his position . . . he was not participating in the process of managing revenue to a higher achievement or managing expenses to a lower level." App. 271. Mr. Lane states that "he was going to be terminated because he wasn't working." App. 307. None of these statements can be squared with Mr.

Blaha's testimony that Mr. Hare was not terminated for any reason relating to his performance. A reasonable jury could conclude that the inconsistency in these statements are evidence that all of the reasons proffered are merely pretextual.

To be sure, individual participants in a collective termination decision might well provide a variety of reasons for the termination of an employee. The mere variety in the reasons would not alone undermine their credibility. Each individual may consider a different reason to be the essential factor in a decision to terminate. *E.g.*, *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1063 (9th Cir. 2002) (upholding grant of summary judgment to employer when employee was fired for two different, but consistent, reasons); *Johnson v. Nordstrom, Inc.,* 260 F.3d 727, 733–34 (7th Cir. 2001) (finding no pretext when the employer's reasons for termination were neither inconsistent nor conflicting); *Nidds v. Schindler Elevator Corp.,* 113 F.3d 912, 918 (9th Cir. 1997) (holding that different justifications for an adverse action are not sufficient to defeat summary judgment when those reasons are "not incompatible"). However, the reasons stated by the ARI management team were not only different but mutually inconsistent. Under the *McDonnell Douglas* framework, contradictions of this sort are sufficient to establish pretext for purpose of summary judgment. *Randle v. City of Aurora*, 69 F.3d 441, 452 (10th Cir. 1995) (stating that the plaintiff need not provide direct evidence of discriminatory motive to survive summary judgment).

Furthermore, the district court erroneously required Mr. Hare to provide not only evidence that the defendants' proffered reasons for discharging Mr. Hare were pretextual, but additional evidence to show that age discrimination was the real reason, citing *MacDonald v. E. Wyo. Mental Health Ctr.*, 941 F.2d 1115, 1122 (10th Cir. 1991) ("While the MacDonalds may have created a genuine issue as to whether the proffered reasons were the real reasons for their discharge, they have offered no credible evidence that the real reason was age discrimination."). *Hare*, 2006 WL 1517730, at *13. *MacDonald* is no longer good law. The holding was implicitly overturned by this Court in *Randle*, 69 F.3d 441, which stated that discriminatory animus may be inferred from the simple showing of pretext. The rule was confirmed by the Supreme Court in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147–49 (2000). The current standard for an age-discrimination claim to survive summary judgment does not necessarily require a plaintiff to provide any evidence that the real reason for his termination was age-related. The Court noted in *Reeves* that the showing of a prima facie case, "combined with sufficient evidence to find that the employer's asserted justification is false . . . will [not] *always* be adequate" to avoid summary judgment. *Id.* at 148. Yet, the exceptions described in *Reeves* impose a heavy evidentiary burden on employers in showing an alternative source for the discrepancies in their reasons. *Id.*

> For instance, an employer would be entitled to judgment as a matter of law if the record *conclusively* revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was *abundant and uncontroverted* independent evidence that no discrimination had occurred.

*Id.* (emphasis added). Because the Defendants are unable to provide "abundant and uncontroverted" evidence that no discrimination occurred, Mr. Hare's showing of inconsistencies in the Defendant's reasons for discharging him are sufficient to satisfy his burden of production and survive summary judgment.

### III. Wrongful Discharge

Mr. Hare also claims that he was wrongfully discharged in violation of public policy under Colorado common law. He argues that ARI's decision not to permit him to pay out bonuses under the old plan to himself and Mr. Klein was somehow illegal and therefore that it violated Colorado public policy to fire him for refusing to carry it out. To survive summary judgment on this claim, Mr. Hare must show that (1) his employer directed him to perform an illegal act as part of his work related duties; (2) the act directed by his employer would violate a specific statute relating to public health, safety or welfare; (3) he was terminated as a result of refusing to perform the act directed; and (4) his employer was aware or reasonably should have been aware that Mr. Hare's refusal to comply with the directive was based on his reasonable belief that the act was illegal, contrary to clearly expressed statutory policy relating to Mr. Hare's duty

-17-

as a citizen, or violative of Mr. Hare's legal right or privilege as a worker. *Roe v. Cheyenne Mt. Conf. Resport*, 124 F.3d 1221, 1235 (10th Cir. 1997) (citing *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 109 (Colo. 1992)).

We are skeptical that Mr. Hare has established any of the elements necessary to describe a wrongful discharge claim under Colorado common law. Because failure to show a genuine dispute of material fact as to one of the elements is fatal to Mr. Hare's claim, we shall focus only on the issue of causation.

As the district court held, a reasonable jury could not find on this record that there was a causal connection between Mr. Hare's refusal to follow management's directive not to pay bonuses and his termination twenty months later. The temporal distance between the two events, without more, cannot support an inference of causation. *See Miller v. Auto. Club of N.M., Inc.*, 420 F.3d 1098, 1121 (10th Cir. 2005) (finding a six month window between protected activity and adverse action insufficient to satisfy causal connection); *Connor v. Schnuck Mkts, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997) (finding four month time lag between protected activity and termination insufficient by itself to justify an inference of causation). Although Mr. Hare claims that documentation of the bonus dispute was reviewed at the time of his termination, nothing in the record supports such a conclusion. The head of ARI's human resources, Mr. Lane, only testifies that documentation of the dispute between Mr. Hare and Mr. Cook

regarding bonuses was copied to him as the head of human resources. Mr. Phillips mentions Mr. Hare's "insubordinate attitude" as one of the reasons for Mr. Hare's termination, but there is no evidence to support the conclusion that Mr. Phillips was specifically referring to the bonuses incident. App. 318. Therefore we affirm the grant of summary judgment for the defendants by the district court.

## IV.

We **AFFIRM** the grant of summary judgment on the wrongful discharge claim, **REVERSE** the grant of summary judgment on the ADEA claim, and **REMAND** for further proceedings consistent with this opinion.

Entered for the Court,

Michael W. McConnell
Circuit Judge